# EXHIBIT C

| | |
|---|---|
| **IN RE:  PEVLIC MESH LITIGATION**<br><br>_____<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**Raeann Bayless**<br><br>                **Plaintiff,**<br>     **v.**<br><br>**Boston Scientific Corp and Coloplast Corp.**<br><br>          **Defendants.** | |

## CASE SPECIFIC EXPERT REPORT OF BRUCE ROSENZWEIG, M.D.

I am Bruce Rosenzweig, M.D. Any and all medical opinions rendered in this report represent my opinions, all held to a reasonable degree of medical certainty, and are based to a reasonable degree of medical probability and are based on scientifically reliable evidence.

## I.  BACKGROUND AND QUALIFICATIONS

I am currently an Assistant Professor of Obstetrics and Gynecology at Rush University Medical Center in Chicago, Illinois. I received my MD degree in 1984 from the University of Michigan in Ann Arbor, Michigan. Following graduation from medical school, I completed an Obstetrics and Gynecology Residency at Michael Reese Hospital in Chicago. In 1988, I attended a one-year pelvic surgery fellowship at State University of New York in Syracuse, New York. Following that fellowship, I attended a two year Urogynecology and Urodynamic fellowship at UCLA Harbor General Hospital in Torrance, California. After graduating from the Urogynecology fellowship, I became a faculty member at the University of Illinois in Chicago. I started a Urogynecology program at the University of Illinois and also was the residency program director. In 1998, I went into private practice, and subsequently established a private practice at Rush

University Medical Center. I have also worked at John H. Stroger Hospital here in Chicago from May 2003 until November 2010 and Weiss Memorial Hospital as Associate Chair of Gynecology from February 2011 until July 2012. I have published numerous articles and given numerous lectures on the topics of pelvic organ prolapse, urinary incontinence and repair of pelvic organ prolapse.  My full qualifications are set forth in my Curriculum Vitae attached to this Report as Exhibit A.

Throughout my career, I have performed over a thousand pelvic floor surgical procedures, including abdominal sacrocolpopexy, uterosacral suspensions, sacrospinous ligament fixations, native tissue repairs, biological graft repairs and synthetic mesh repairs. I have also used numerous synthetic pelvic mesh products, including both POP and SUI products. In addition, I have performed over 350 surgeries dealing with complications related to synthetic mesh, including the removal of numerous Boston Scientific Corp and Coloplast Corp devices.   I was also invited by at least one mesh manufacturer to, and attended, both a POP mesh training seminar and SUI mesh training seminar overseas. In addition, I was also invited and attended training on another POP kit, the Bard Avaulta.  I have expertise and knowledge regarding the pelvic floor and its reaction to materials and devices.  I have also invented and designed products for gynecological uses.   In addition, as discussed more fully below, I have reviewed numerous Instructions for Use and have approved and drafted Instructions for Use for products.

A list of all other cases in which, during the previous 4 years, I have testified as an expert at trial or by deposition is attached as Exhibit B.

## II. BASIS OF OPINIONS

In formulating my opinions and preparing this report, I reviewed scientific literature, corporate documents from Boston Scientific Corp and Coloplast Corp, Inc. (collectively referred to herein as "Boston Scientific Corp and Coloplast Corp"), depositions of Boston Scientific Corp

and Coloplast Corp employees, and the records and depositions specific to Raeann Bayless case. All of the opinions I have are to a reasonable degree of medical and scientific certainty. I understand discovery is still ongoing in this case, and I reserve my right to amend my opinions if further information is provided in any form including, but not limited to corporate documents, depositions and the expert reports of both Plaintiff and Defense experts. The materials I have reviewed and relied upon to form my opinion for this report are attached as Exhibit C, as well as the documents cited throughout this report. I have also relied upon my general causation Advantage Fit report in the MDL.

## III. FINDINGS RELATED TO RAEANN BAYLESS

I reviewed the pertinent medical records and depositions pertaining to the care of Ms. Bayless and below are my opinions of her care, surgery, and treatment, as well as her diagnosis and prognosis.

### A.  SUMMARY OF MEDICAL TREATMENT

Ms. Raeann Bayless (DOB: 1/19/1965) at the time of her implant was 48 years old G9 P4. Ms. Bayless denies any allergies to medications. Ms. Bayless is a current smoker.  Ms. Bayless medical history includes Hepatitis C, heart murmur, gonorrhea, trichomonas and hypertension. Her surgical history is remarkable for Tubal litigation, 3 abortions, gallbladder/stones, Robotic Assisted total laparoscopic hysterectomy, abdominal sacral colpopexy, retropubic mid urethral sling using the Advantage Fit and cystoscopy. Her family history is remarkable for throat cancer, hypertension, diabetes, breast cancer, heart disease, stroke and thyroid disease.

On May 7, 2012, Ms. Bayless went to see Dr. Jayasri Bukkapatnam at Orlando Health. She presented with complaints of vaginal prolapse and urinary incontinence. She stated she

has been dealing with this several years. Now the incontinence progressively worsened. She reported urinating when she laughed or coughed and stated that sometimes she could not make it to the bathroom before urinating on herself. She reported dyspareunia of late. The assessment was mixed incontinence, cystocele, HTN, Hep C, hx isc chole, hx BTL and hx drug abuse. The plan was a urodynamic study, urine culture, referral to Dr. Kathy Jones for eval, RTC if unable to get treatment with Dr. Jones.

Ms. Bayless presented to Dr. Jones on August 14, 2012 for a urodynamic analysis. Incontinence was demonstrated with most coughs and Valsalva. The assessment was uterovaginal prolapse incomplete, nondependent tobacco use and mixed incontinence. She was prescribed Cipro 250mg and pyridium 200mg.

On August 16, 2012, Ms. Bayless went to see Dr. Jones for a cystoscopic diagnostic procedure. The assessment was mixed incontinence, urinary frequency, and nondependent tobacco use disorder. Discussed natural and expected course of this diagnosis and need to alert doctor if symptoms do not follow expected course or if they get any worse. Prescribed pyridium 100mg and Cipro 250 mg.

On May 28, 2013, Ms. Bayless presented to Dr. Jones with complaints of mixed incontinence, prolapse of vaginal vault after hysterectomy and midline cystocele. The assessment was midline cystocele, mixed incontinence and incomplete utervaginal prolapse. The doctor discussed abdominal approach, laparoscopic and vaginal approach each of these procedures can be combined with graft augmentation either biologic or synthetic mesh. Ms. Bayless opted for robotic assisted total laparoscopic sacralcolpopexy with mesh, possible sling, possible cystocele repair and cystoscopy.

On August 9, 2013, Ms. Bayless saw Dr. Kathy Jones who performed the following procedures: Robotic Assisted total laparoscopic hysterectomy, abdominal sacral colpopexy with Restorelle Y-mesh, retropubic mid urethral sling using the Advantage Fit and cystoscopy. Her pre-operative diagnoses were incomplete uterovaginal prolapse, cystocele and stress urinary incontinence. Her post-operative diagnoses were uterovaginal prolapse, cystocele, stress urinary incontinence and pelvic adhesions. Findings were a stage 2 anterior wall prolapse with concomitant incomplete uterovaginal prolapse. She had urodynamic confirmed stress urine incontinence and evidence of diverticular disease in the sigmoid colon. On surgical pathology the findings were Cervix: marked acute and chronic cervicitis, prominent squamous metaplasia, nabothian cysts. Uterus corpus: hemorrhagic mid to late secretory endometrium, superficial adenomyosis and relatively unremarkable serosal surface.

Subsequently, on August 11, 2013, Ms. Bayless was transported via fire rescue to Parrish Medical Center. She complained of abdominal pain and distention. She stated that she has a hysterectomy on Friday and she related the pain an 8 out of 10. At Parrish Medical Center, she had an acute abdomen with chest exam that showed extensive fecal material in the ascending colon. Bilateral lower areas of pneumonia or atelectasis. She had a CT of abdomen and pelvis that also showed extensive fecal material in ascending colon with presence of gas in the rest of the colon. There was postsurgical changes in the right adnexa and a cystic lesion in this area may represent either a cyst in the ovary or cystic fluid collection.

Ms. Bayless went to see Dr. Jones on September 24, 2013. She was 6 weeks post-op s/p sacralcolpopexy with mesh, cystocele repair with mesh. She has occasional pelvic discomfort and mood swings. She reported abdominal pain, change in appetite, heartburn, nausea, difficulty swallowing, bowel movement changes, discharge, vaginal odor, vaginal

itching, muscle aches, arthralgias/joint pain, back pain, swelling in extremities, abnormal mole, itching, numbness, dizziness, frequent or severe headaches, tingling, weakness, fatigue, hair loss, cold intolerance, dry vaginal mucosa, impaired memory/concentration, decreased libido and orgasmic dysfunction. The assessment was aftercare following surgery of the genitourinary system. Discussed post-op activity and restrictions, encouraged adherence and to continue stool softeners.

Ms. Bayless went to see David Magness, DO at Brevard Health Alliance on March 7, 2014. She had complaints of HTN and yeast infection.  The impression was hypertension, tobacco abuse, overweight, exposure to sexually transmitted disease and episodic cocaine abuse. She was counseled on checking her blood pressure and the benefits of stopping smoking. She was also given recommendations for a healthy diet for weight loss and told to keep active.

On July 24, 2014, Ms. Bayless presented to Corinne West ARNP at Brevard Health Alliance to discuss the following: HTN takes Lisinopril, but not for the past weeks, foul odor with vaginal discharge.  The impression was hypertension, hypertriglyceridemia, vaginitis, hoarseness, exposure to sexually transmitted disease and episodic cocaine abuse. She was given Lisinopril 20mg, metronidazole 500mg, advised to quit smoking, told to have a low fat diet, eliminate alcohol, do 30-60 minutes of aerobic activity and told to meet with case management.

Ms. Bayless presented to Dr. Michael Homerick on September 5, 2014. She complained of vaginal bleeding. She had a hysterectomy one year ago p/w vaginal spotting without pain x 3 in the 4 months when she has had sex. She also thinks she may be able to feel mesh at the back of the vaginal wall. On speculum exam there was exposed mesh, slight with

6

no surrounding erythema or excoriation, no bleeding, os removed. She has follow up with her OB/GYN and will be treated for G/C and tested for HIV at her request. The impression was vaginal bleeding. She was told to follow up with her doctor regarding blood pressure because it was high and return if she developed headache, dizziness and chest pain.

On May 22, 2015, Ms. Bayless saw Corinne West ARNP at Brevard Health Alliance to discuss the following: HTN, anger and foul odor with vaginal discharge. The impressions were hypertension, anger and vaginal discharge. She was told to start sertraline for her anger and have a follow up in one month. She was also given Flagyl for her vaginal discharge.

On June 11, 2015, Ms. Bayless went to see Parrish Medical Center to see Dr. Francisco Garcia with complaints of rash and vaginal discharge. She has a rash to her lower extremities for one week. She reported she has a 2 week history of malodorous, brown vaginal discharge. On physical exam there was a small abrasion to right lower leg. The impression was vaginal erosion due to surgical mesh, bacterial vaginosis and trichomonas vaginitis. She was instructed to follow up with OB/GYN within 7 days for further care. She was prescribed Ciprofloxacin HCL 500mg and Metronidazole 500mg.

According to her Plaintiff's fact sheet, Ms. Bayless injuries included: mesh erosion, vaginal bleeding, infections, nausea off and on, constipation and stomach pain after eating.

### B.  OPINIONS

Based upon my review of Ms. Bayless medical records, my experience and education, my review of deposition transcripts, internal Boston Scientific Corp and Coloplast Corp company documents, and my extensive review of the available medical literature, I currently hold the following opinions to a reasonable degree of medical certainty:

1.  That Dr. Kathy Jones care and treatment of Ms. Bayless met the standard of care.

The Advantage Fit and Restorelle Y-mesh implant procedure was indicated to treat Ms. Bayless's symptoms of stress urinary incontinence symptoms and pelvic organ prolapsed and were performed within the standard of care with no evidence of surgeon error or deviation from the procedural steps.

Based upon my review of Ms. Bayless' medical records, my experience and education, my review of deposition transcripts, internal Boston Scientific Corp and Coloplast Corp company documents, my extensive review of the available medical literature, of Ms. Bayless.[1]     I have formed opinions regarding Ms. Bayless's current complications as follows:

1. In coming to those conclusions, a broad differential diagnosis was reviewed and considered her medical history prior to the mesh implant procedure as detailed above and which includes:  she was a G9 P4054. Ms. Bayless denies any allergies to medications. Ms. Bayless is a current smoker.  Ms. Bayless medical history includes Hepatitis C, heart murmur, gonorrhea, trichomonas and hypertension. Her surgical history is remarkable for Tubal litigation, 3 abortions, gallbladder/stones.

2. I have also considered her medical history following the mesh implant procedure, which includes:  mesh erosions/exposures. None of these factors increased the risk for developing her symptoms or injuries.

3. I rule out her smoking.  Ms. Bayless was a long time smoker but never had poor wound healing associated with her prior surgeries.  While smoking is a contributory factor in mesh erosions, there would not have been mesh erosion without mesh placement.

---

[1] I reserve my right to exam Ms. Bayless prior to the time of trial.

I have come to the following conclusions regarding Ms. Bayless' conditions to a reasonable degree of medical certainty:

1. As a result of the implantation of the Advantage Fit and Restorelle Y-mesh products, including the mesh characteristics discussed below and within my general expert report, and the subsequent reactions and surgical revision, Ms. Bayless has sustained the following injuries, which are most likely permanent in nature: mesh erosions/exposures, vaginal bleeding and infection.

2. It is my opinion, to a reasonable degree of medical and scientific certainty, that the debilitating injuries suffered by Ms. Bayless, which are listed above, were directly caused by the  Advantage Fit and Restorelle Y-mesh device, including the following polypropylene mesh characteristics: (a) degradation of the mesh; (b) chronic inflammation and chronic foreign body reaction; (c) mesh that was never meant to be implanted inside the human body and is incompatible with the naturally occurring condition of the vagina including peroxides and bacteria; (d) deformation, stiffness and rigidity of the mesh, fraying, roping, cording, curling and sharp edges of the mesh; (e) loss of pore size with tension; (f) fibrotic bridging leading to scar plate formation and mesh encapsulation; (g) shrinkage/contraction of the encapsulated mesh; and (h) the difficulty and/or impossibility of removing the devices; (i) migration.

3. To a reasonable degree of medical certainty, contraction, shrinkage, deformation, degradation, and sharp edges of the  Advantage Fit and Restorelle Y-mesh, the materials used to manufacture the  Advantage Fit and Restorelle

Y-mesh, and the design of the  Advantage Fit and Restorelle Y-mesh, , or a combination of these factors, caused Ms. Bayless' injuries, as listed above.

Based upon my medical education, experience, my review of the currently available medical literature and Ms. Bayless' medical records, I have come to the following conclusions regarding Ms. Bayless' prognosis and chance for recovery to a reasonable degree of medical certainty:

1. It is my opinion to a reasonable degree of medical certainty that Ms. Bayless will have continued and ongoing complications and need additional medical treatments in the future related to the permanent complications she suffered from the inadequacies and implantation of the Advantage Fit and Restorelle Y-mesh. Despite her physician's efforts, pieces of the Advantage Fit and Restorelle Y-mesh still likely remain in Ms. Bayless pelvic tissue. There is nothing else contained in Ms. Bayless's medical records, other than the presence of the Advantage Fit and Restorelle Y-mesh in her body, that could account for her injuries. Therefore, Ms. Bayless will continue to suffer from long-term risks of future erosion, infection, vaginal pain and pelvic pain. She will likely also experience chronic foreign body reaction and chronic inflammation. These risks remain for as long as the mesh remains in her body. Therefore, Ms. Bayless may need additional surgery to remove any remaining mesh as well as the possibility of additional vaginal surgeries for vaginal scarring, pelvic pain, and recurrent infections, and will likely continue to suffer other injuries associated with the original implantation of the device. Ms. Bayless will likely require pelvic floor therapy and physical therapy to

alleviate her symptoms stemming from the implant of the mesh.  I highly recommend that Ms. Bayless be followed up with a continuum of care, including but not limited to, physical therapy, counseling, biofeedback therapy, and/or Botox therapy for her chronic pain, which may or may not be ultimately successful. This continuum of care could range anywhere from 6 months to 5 years. This continuum of care is time-consuming, socially disruptive, very expensive, and not usually covered by insurance.

2.  Mesh Erosion/Exposure with vaginal bleeding and infection Prognosis is poor. It is highly unlikely, even with aggressive physical therapy, biofeedback, medication use and/or surgical intervention, for Ms. Bayless to have complete resolution of the mesh erosions/exposures.  More likely than not, she will require future surgery to treat symptomatic mesh erosion as remnants of the Advantage Fit and Restorelle Y-mesh remain in her body and will continue to cause chronic/permanent inflammation, foreign body reaction, scarring, future erosions, pain and associated complications.

3.  Other Pelvic and Vaginal Problems (scarring, FBR, degradation, migration, inflammation): Prognosis is poor.  It is highly unlikely, even with aggressive physical therapy, biofeedback medication use and/or surgical intervention, for Ms. Bayless to have complete resolution of her pelvic and vaginal problems.

Based upon my review of Ms. Bayless' medical records, my experience and education, my review of depositions, internal Boston Scientific Corp and Coloplast Corp documents and review of the available medical literature, I currently hold the following opinions to a reasonable degree of medical certainty:

11

1. Ms. Bayless was not able to make a fully informed medical decision regarding the implantation of the  Advantage Fit and Restorelle Y-mesh mesh because Boston Scientific Corp and Coloplast Corp failed to fully disclose the risks and complications (both early and late) in the Advantage Fit and Restorelle Y-mesh Directions/Instructions for Use. As discussed above, and elsewhere in this report, Ms. Bayless did not receive information about the above risks because Boston Scientific Corp and Coloplast Corp did not disclose them fully in its DFU/IFUs, and surgeons, including the implanting surgeon in Ms. Bayless' case, were not made aware of them.  This is true despite information readily available to Boston Scientific Corp and Coloplast Corp about these risks, which predate the launch of the devices. Because of this, Ms. Bayless' implanting surgeon could not pass this information on to her and properly consent her about the risks associated with the Advantage Fit and Restorelle Y-mesh device.  Ms. Bayless was unable to make a fully informed decision about having the devices implanted.  As a result, to a reasonable degree of medical certainty, Ms. Bayless suffered injuries that were not disclosed by Boston Scientific Corp and Coloplast Corp, and the inadequate disclosure of these risks was a substantial factor and/or cause of Ms. Bayless' injuries.

2. Ms. Bayless' implanting surgeon, Dr. Jones, was not able to provide the necessary and required information to Ms. Bayless for an informed consent because Boston Scientific Corp and Coloplast Corp failed to fully reveal such information and failed to fully evaluate said information prior to launch.

3. Ms. Bayless has developed complications, as described above, as a result of the Advantage Fit and Restorelle Y-mesh mesh being implanted in her body, causing chronic inflammation, foreign body reaction, scarring, contraction, shrinkage, deformation and degradation of the mesh due to the defects of the mesh described above and throughout this report.

4. As a result of these complications from the Advantage Fit and Restorelle Y-mesh, Ms. Bayless has suffered damages and will continue to suffer future damages.

5. These complications have caused a significant impact on Ms. Bayless' quality of life. Currently, Ms. Bayless has been forced to significantly reduce and/or alter her activities due to her injuries, as set forth above.

Safer alternative designs, rather than the Sling System Advantage Fit Transvaginal Mid-urethral and Restorelle Y-mesh polypropylene mesh product, existed for this patient. I have experience with many of these safer alternative designs, and based on my experience and review of medical literature and other materials, it is my opinion that these alternative designs were safer and feasible for Ms. Bayless. These safer alternative designs include:

(1) the use of sutures, including delayed absorbable sutures like PDS, in a colposuspension procedure like the Burch, or a suture based native tissue POP repair;

(2) autologous fascia sling or POP repair;

(3) an allograft sling or POP repair with a allograft such as Repliform; and

(4) a sling or POP reapir with less polypropylene such as Ultrapro.

These safer alternative designs were capable of preventing Ms. Bayless's injuries and damages, as I have described in my report, that were a result of the specific design flaws of the Sling System Advantage Fit Transvaginal Mid-urethral and Restorelle Y-mesh polypropylene, including degradation, cytotoxicity, stiffness, migration, deformation, fraying, roping, cording, curling, banding, scarring, shrinkage/contraction, scar plate formation, chronic inflammation, chronic foreign body reaction, loss of pore size with tension, dense, heavy, and frayed, rough edges. If any of these safer alternative designs been used for Ms. Bayless, she would not have suffered the injuries I set forth in my report, as her injuries were caused by the specific design flaws of the Sling System Advantage Fit Transvaginal Mid-urethral device or Restorelle Y-mesh discussed above and in my general report.  The likelihood that the Sling System Advantage Fit Transvaginal Mid-urethral device's and Restorelle Y-mesh's design would cause Ms. Bayless's injuries and damages and the gravity of those injuries and damages outweighed the burden on BSC and Coloplast of adopting such alternative designs and the adverse effects, if any, of such alternative designs on the utility of Sling System Advantage Fit Transvaginal Mid-urethral and Rstorelle Y-mesh product. The inadequate warnings about the Sling System Advantage Fit Transvaginal Mid-urethral device and Restorelle Y-mesh significantly increased the likelihood of injuries and damages to Ms. Bayless and caused or contributed to cause the injuries and damages to Ms. Bayless and BSC and Coloplast failed to use reasonable care to provide adequate warnings to users and handlers of the Sling System Advantage Fit Transvaginal Mid-urethral and Restorelle Y-mesh product, as discussed herein.

Finally, I have reviewed Ms. Bayless' past medical bills as set forth in my reliance list. It is my opinion that they were reasonable and necessary charges to treat the complications and

injuries that, to a reasonable degree of medical certainty, were caused by the Advantage Fit and Restorelle Y-mesh, as discussed above.

**VI.    CONCLUSION**

All opinions I have are to a reasonable degree of medical certainty.  I understand discovery is still ongoing in this case and I reserve my right to amend my opinions if further information is provided in any form including, but not limited to, corporate documents, depositions and expert reports of both Plaintiff and Defense experts. I have relied upon my prior Advantage Fit report, and I incorporate those opinions and materials herein.

Signed this __4__ day of ___June_____, 2018.

X_____

Bruce Rosenzweig M.D.