UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAEANN BAYLESS,

      Plaintiff,

                                        Case No.: 6:20-cv-00831-RBD-GJK

v.

                                        <u>Dispositive Motion</u>

BOSTON SCIENTIFIC CORPORATION
and COLOPLAST CORP.,

      Defendants.

_____/

**DEFENDANT COLOPLAST CORP.'S MOTION FOR**
**SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Coloplast Corp. ("Coloplast") moves for summary judgment on all of Plaintiff Raeann Bayless's ("Plaintiff" or "Ms. Bayless") remaining claims in this surgical-mesh product-liability case.[1]

Plaintiff filed this action against Defendants Coloplast and Boston Scientific Corporation ("BSC"), asserting product-liability claims arising out of her pelvic floor reconstructive surgery which was augmented with two surgical implants: Coloplast's Restorelle® Y ("Restorelle Y")[2] to treat her pelvic organ prolapse and BSC's Advantage Fit™

---

[1] Plaintiff conceded that she is not pursuing her manufacturing-based and warranty-based claims, and this Court therefore deemed those claims withdrawn. (*See* ECF No. 97; *see also* Ex. 1, Excerpts of Tr. of June 17, 2020 Telephonic Status Conf. at 10:11–11:6.) As a result, those claims are no longer at issue and not addressed herein. As set forth in Boston Scientific Corporation's contemporaneous motion for summary judgment, Plaintiff also concedes on Count VIII - Discovery Rule, Tolling and Fraudulent Concealment. (*See* ECF No. 110 at 1, fn.1.) In any event, Plaintiff makes no showing in support of those claims.

[2] Restorelle Y, manufactured by Coloplast, is a prescription-only, polypropylene surgical mesh implant cleared for sale by the U.S. Food and Drug Administration ("FDA") for the surgical repair of pelvic organ prolapse.

Transvaginal Mid-Urethral Sling System ("Advantage Fit")[3] to treat her stress urinary incontinence.  While Plaintiff asserts four remaining causes of action, the essence of her lawsuit is that Restorelle Y and Advantage Fit were defective and caused her personal injuries, and that Coloplast and BSC failed to warn of, misrepresented, and/or concealed the alleged risks associated with these surgical mesh implants.

The undisputed facts establish that Coloplast is entitled to summary judgment because Plaintiff's claims[4] lack factual or legal support:

- *First*, Plaintiff cannot meet her threshold burden of proving both general causation (*i.e.*, that Restorelle Y implants can cause the injuries she complains of) and specific causation (*i.e.*, that her Restorelle Y implant caused her alleged injuries, as opposed to another cause) through expert medical testimony.  In fact, as set forth in Coloplast's *Daubert* motion (filed concurrently herewith and incorporated herein), Plaintiff's lone causation expert, Dr. Bruce Rosenzweig, never properly disclosed general causation opinions about Restorelle Y in this case.  And, his specific causation opinion is unreliable and not based on sufficient facts or data, as explained in Coloplast's *Daubert* motion.  Consequently, Plaintiff fails to prove causation for any of her claims.

- *Second*, Plaintiff's claims for strict liability failure-to-warn and negligent failure-to-warn fail for two reasons: (a) the warnings accompanying her Restorelle Y were adequate as a matter of law; and (b) Plaintiff cannot establish proximate causation because Dr. Jones was independently aware of the risks for which Plaintiff now seeks recovery, and further, there is no evidence that a differently worded warning would have resulted in her not selecting Restorelle Y for Plaintiff.  In fact, Dr. Jones did not review the Instructions for Use ("IFU") accompanying Restorelle Y at the time of Plaintiff's surgery, and she did not rely on the IFU to inform her of the risks associated with the use of Restorelle Y.

- *Third*, to the extent Plaintiff is pursuing any part of her claim alleging "discovery rule, tolling, and fraudulent concealment," Plaintiff's claim should be dismissed because it is not a cognizable claim under Florida law.

---

[3]     Advantage Fit, manufactured by BSC, is a prescription-only, sub-urethral sling made of polypropylene mesh and cleared for sale by FDA for the surgical repair of stress urinary incontinence.

[4]     Plaintiff's remaining claims are: negligent failure to warn and negligent design (Count I); strict liability – design defect (Count II); strict liability – failure to warn (Count IV); and punitive damages (Count IX).

- *Fourth*, Plaintiff's claim for punitive damages fails as a matter of law because Plaintiff lacks any evidence, much less clear and convincing evidence, that Coloplast acted with "intentional misconduct or gross negligence" with regard to designing Restorelle Y or warning of its risks.

For these reasons and as more fully discussed below, Coloplast is entitled to summary judgment on all of Plaintiff's claims.

## I.    STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff was a resident of Florida when she elected to undergo pelvic reconstructive surgery to treat her symptoms of pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI") in August 2013.  (*See* Ex. 2, Apr. 14, 2018 Excerpts of Plaintiff Fact Sheet at 2, 6.)

2.    On August 9, 2013, Dr. Kathy Jones performed an extensive pelvic-floor reconstructive surgery on Plaintiff, which included a robotic-assisted total laparoscopic hysterectomy, an abdominal sacral colpopexy for POP repair using Coloplast's Restorelle Y, a retropubic mid-urethral sling procedure for treatment of SUI using BSC's Advantage Fit, and a cystoscopy.  (*See* ECF No. 113-1, Aug. 9, 2013 Operative Report at COL PLTF 000066.)

3.    Restorelle Y is an FDA-cleared, prescription-only polypropylene surgical mesh implant indicated for the surgical repair of POP by abdominal sacral colpopexy.  (*See* Ex. 3, Restorelle Y Instructions for Use, June 2012; *see also* Ex. 4, FDA's Restorelle clearance letter, available at https://www.accessdata.fda.gov/cdrh_docs/pdf9/K092207.pdf (last accessed Sept. 29, 2020); Ex. 5, FDA's Restorelle Y clearance letter, available at https://www.accessdata.fda.gov/cdrh_docs/pdf11/K112322.pdf (last accessed Sept. 29, 2020).)

123707101.1

4.     The Instructions for Use ("IFU") that accompanied Plaintiff's Restorelle Y

device warned as follows:

> Warnings and Precautions:
> …
>
> The implant procedure carries an inherent risk of **infection** and **bleeding**, as do
> similar urological procedures.
> …
>
> Adverse Effects:
>
> Adverse effects associated with the use of Restorelle Y include: transient local
> wound irritation, foreign body inflammatory response, hematoma, adhesions,
> **pain**, **infection**, wound dehiscence, **erosion**, **extrusion**, **exposure**, fistula, nerve
> damage, contracture, urinary incontinence, voiding dysfunction, defecatory
> dysfunction, ilecs or small bowl obstruction, **dyspareunia** and **procedure**
> **failure may occur**.

(*See* Ex. 4, Restorelle Y Instructions for Use, June 2012 (emphasis added).

5.     Dr. Jones did not review the IFU for Restorelle Y at the time of Plaintiff's

surgery, and she did not rely on the IFU to inform her of the risks associated with the use of

Restorelle Y.  (*See* ECF No. 113-10, Sept. 12, 2018 Dep. of Dr. Kathy Jones ("Jones Dep.") at

121:16-122:17.)

6.     Before Plaintiff's August 2013 surgery, Dr. Jones was aware that risks of

female pelvic reconstructive surgery augmented with polypropylene mesh included mesh

exposure or erosion, dyspareunia, pain, infection, failure of the procedure, voiding dysfunction,

recurring incontinence, urinary retention, delayed healing, bleeding, and the need for repeat

surgery.  (*See id.* at 78:2-8, 122:6-17, 126:10-127:14.)

7.     Before Plaintiff's August 2013 surgery, Dr. Jones was aware of the risks

addressed in the 2008 and 2011 FDA safety communications relating to pelvic reconstructive

surgery with polypropylene mesh.  (*Id.* at 122:18-123:13, 132:2-8; *see also* Ex. 6, Oct. 20, 2008 Surgical Mesh: FDA Safety Communication at 1; *see also* Ex. 7, July 2011 Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse).  Dr. Jones prepared laminated documents relaying these FDA warnings and reviewed them with each patient, including Plaintiff.  (*See* ECF No. 113-10, Jones Dep. at 123:2-13.)

8.     At pre-operative visits, Dr. Jones had her routine "risk/benefit" conversation with Plaintiff and informed her of the possible complications of her hysterectomy and pelvic floor reconstructive surgery including mesh exposure and/or extrusion, bleeding, infections, damages to surrounding organs, urinary retention, hematoma, poor or delayed wound healing, pain or discomfort with sexual intercourse, incomplete bladder emptying, worsening or no change in urinary incontinence, and recurrence of prolapse.  (*See id.* at 33:1-34:7, 85:9-86:14; *see also* ECF No. 113-1, May 28, 2013 Encounter Note at COL-RBAYLESS-ORLANDO-000017-18.)

9.     Plaintiff also reviewed and executed a number of informed consent documents that set forth the risks of different components of her surgery, including but not limited to, exposure/erosion of mesh, pain with intercourse, delayed healing, and potential requirement of future surgery to repair a complication of the prior surgery.  (*See* Ex. 8, Excerpts of June 6, 2018 Dep. of RaeAnn Bayless ("R. Bayless Dep.") at 95:1-100:10; *see also* ECF No. 113-1, May 28, 2013 Informed Consent and Request For Repair of Relaxation of Pelvic Organs and/or Urinary Incontinence at COL-RBAYLESS-ORLANDO-000021-22; May 28, 2013 Informed Consent For Anterior Colporrhaphy at COL-RBAYLESS-ORLANDO-000024; and May 28,

2013 Augmentation Graft Consent Form at COL-RBAYLESS-ORLANDO-000026.)

10. On February 5, 2016, Plaintiff filed this product-liability lawsuit against Coloplast and BSC directly into MDL 2326[5] pleading claims sounding in negligence, strict liability, warranty, and fraud, all of which were based on alleged complaints related to her 2013 pelvic reconstructive surgery. (*See* ECF No. 1.)

11. Dr. Bruce Rosenzweig, Plaintiff's sole purported general causation expert, served no general causation report and offered no general causation opinions for any Coloplast transabdominal POP implant, including Restorelle Y, either in the MDL proceedings or in this case. (*See* ECF No. 113-6, Excerpts of Mar. 10, 2019 Rule 26 Expert Report of Bruce Rosenzweig, M.D. ("Rosenzweig POP Report") at 8 (disclosing opinions related only to Coloplast surgical mesh implants with "transvaginal indication for the pelvic organ prolapse" and omitting any reference to Restorelle Y, the surgical mesh implant used during Plaintiff's trans*abdominal* POP repair); *see also* ECF No. 113-7, Excerpts of May 2, 2019 Dep. of Bruce Rosenzweig (*In re: Coloplast Corp.*) ("Rosenzweig MDL Dep.") at 317:9-321:21.)

12. Dr. Rosenzweig is also Plaintiff's sole specific-causation expert. (*See* ECF No. 113-5, Pl.'s Rule 26 Expert Disclosures (June 4, 2018) at 1-2.)

## II. LEGAL STANDARD

The Court is well aware of the proper standard that applies on summary judgment. *See Payne v. C.R. Bard, Inc.*, No. 6:11-CV-1582-Orl-37GJK, 2014 WL 1887297, at *2 (M.D. Fla. May 12, 2014) (Dalton, J.), *aff'd*, 606 F. App'x 940 (11th Cir. 2015). Indeed, this Court

---

[5] *In re: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation*, MDL No. 2326, Civil Action No. 2:16-cv-01311 (S.D.W. Va.).

previously granted summary judgment in another medical-device case when the plaintiff failed to establish several necessary elements of Florida product-liability claims. *See id.* at \*3. Thus, Coloplast will not force the Court to wade through an unnecessary recitation of the legal standard.

### III.   ARGUMENT

#### A.   All of Plaintiff's Claims Fail as a Matter of Law Because Plaintiff Cannot Prove General or Specific Causation.

Plaintiff's claims fail because she has no admissible expert evidence that the Restorelle Y used to treat her POP could cause, and did cause, her alleged injuries, as Florida law requires. *See Cochran v. E.I. DuPont de Nemours*, 933 F.2d 1533, 1537 (11th Cir. 1991) ("[T]he Supreme Court has held that [R]ule 56(c) mandates the entry of summary judgment against a party who fails to prove an essential element of the case.") (citing *Celotex Corp.*, 477 U.S. at 323).

As the Eleventh Circuit and federal courts within the Eleventh Circuit have repeatedly held, a Florida product-liability plaintiff must prove ***both*** general and specific causation. "[T]o establish medical causation . . . a plaintiff must show both that exposure to the alleged toxic substance can cause a particular disease (general causation), and that exposure to the alleged toxic substance was a cause of his or her individual injury (specific causation)." *Guinn v. AstraZeneca Pharm. LP,* 598 F. Supp. 2d 1239, 1242 (M.D. Fla. 2009); *see also Haller v. AstraZeneca Pharm. LP,* 598 F. Supp. 2d 1271, 1275 (M.D. Fla. 2009) (same); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) ("To prove their toxic tort claims, Plaintiffs must prove the toxicity of the ephedrine/caffeine combination ***and*** that it had a toxic effect on them causing the injuries that they suffered.") (emphasis added).

123707101.1

Importantly, the plaintiff must prove both general *and* specific causation through admissible expert testimony.  *See, e.g.*, *McClain*, 401 F.3d at 1237 ("This type of proof requires expert testimony . . . ."); *Guinn,* 598 F. Supp. 2d at 1243 n.25  (noting that "exclusion of [specific-causation expert]'s testimony is itself a basis for granting summary judgment" (citation omitted)); *Drury v. Cardiac Pacemakers, Inc.*, No. 8:02CV933T-17MAP, 2003 WL 23319650, at *4 (M.D. Fla. June 3, 2003) ("Design defects must be proven by expert testimony." (citation omitted)); *Marking v. Novartis Pharm. Corp.*, No. 00-9108-CV, 2002 WL 32255405, at *3 (S.D. Fla. Feb. 12, 2002) ("Plaintiffs are required to introduce expert testimony to establish medical causation.").

Therefore, summary judgment is required where a plaintiff fails to provide expert testimony on either general or specific causation.  *See Haller,* 598 F. Supp. 2d at 1303 n.190 (granting summary judgment absent an expert on causation); *see also, e.g.*, *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1334 n.4 (11th Cir. 2010) (affirming summary judgment); *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (affirming summary judgment); *Payne v. C.R. Bard, Inc.*, No. 6:11-CV-1582-Orl-37GJK, 2014 WL 1887297, at *3 (M.D. Fla. May 12, 2014) (granting summary judgment because "[p]laintiffs can point to no expert testimony to establish either product defect or causation") (Dalton, J.), *aff'd*, 606 F. App'x 940 (11th Cir. 2015); *Marking*, 2002 WL 32255405, at *3 (granting summary judgment).

Here, Plaintiff fails to provide competent expert testimony to support general causation *or* specific causation.  *See* Coloplast's *Daubert* Motion to Exclude the Opinions and Testimony of Bruce Rosenzweig, M.D. (filed concurrently herewith and incorporated herein) (ECF No. 113).  First, she has not offered *any* evidence whatsoever – much less expert evidence – that

123707101.1

Restorelle Y can cause the injuries of which she complains.  In fact, at no point has Plaintiff's sole general causation expert, Dr. Bruce Rosenzweig, ever served any general causation report for any Coloplast *transabdominal* POP implant, including Restorelle Y.  (*See* ECF No. 113-6, Rosenzweig POP Report at 8 (omitting any general causation opinions regarding Restorelle Y, the surgical mesh implant used during Plaintiff's transabdominal POP repair.)  Indeed, during his MDL deposition, Dr. Rosenzweig (and counsel for the MDL Plaintiffs) repeatedly made clear that his report did not contain, and he was not offering, *any* general causation opinions about the design, warnings, or other characteristics of Restorelle Y:

> Q. …You have no objection to the use of polypropylene mesh being used in a sacrocolpopexy done abdominally, correct?
>
> ***
>
> A: ***I have not offered opinions in this specific litigation regarding Coloplast abdominally-placed mesh***.  I do not recommend the use of abdominally-placed mesh. I do not fault doctors for using abdominally-placed mesh.
>
> Q: You do not think the Restorelle Y, which is indicated for abdominal sacrocolpopexy, is defective, correct?
>
> ***
>
> A: ***I have not offered an opinion about the Restorelle Y mesh.***
>
> Q: And you don't --
>
> A: I can give you the characteristics of it.
>
> Q: -- you don't intend to offer an opinion that the Restorelle Y mesh is ***designed defectively***, correct?
>
> A: ***I have not offered opinions about the Restorelle Y mesh***.
>
> Q: And you do not intend to offer any opinions that the Restorelle Y mesh is ***defective in any way***?

A: *I am not offering opinions about the Restorelle Y mesh*.

Q: And you do not intend to offer any opinions that the Restorelle Y polypropylene mesh *degrades or disintegrates* in any way when implanted, correct?

[PLAINTIFF'S COUNSEL]: I'm going to object.  He has just told you he is not offering any opinions about Restorelle Y. … So every question after that is absolutely, you know, not necessary.  *And I can, as counsel who would be producing him as an expert today and putting him up at trial, he will not be offering any opinions about the Restorelle Y.  It is not in his -- his report.  He has never said he was doing that.  And I can confirm it's not going to happen*.

Q: So, Doctor, am I understanding correctly that you don't have any issue with the use of Restorelle Y, correct?

[PLAINTIFF'S COUNSEL]: I'm going to object to the form.  He has not … reviewed the materials on Restorelle Y.  *He has not written a report that has opinions on that.  And he is not here to answer questions about Restorelle Y*.

\*\*\*

Q. Can you go ahead and answer my question, please?

A. *I am not offering opinions about the Restorelle Y mesh*.

 (*See* ECF No. 113-7, Rosenzweig MDL Dep. at 317:9-320:1 (emphasis added).)  Because her lone causation expert never properly disclosed general causation opinions about Restorelle Y, all of Plaintiff's claims fail as a matter of law.

Second, even if Dr. Rosenzweig had offered general causation opinions—which he has not—Plaintiff's claims still fail because she also lacks competent expert testimony on specific causation.  Specifically, and as more fully demonstrated in Coloplast's contemporaneous *Daubert* motion, Dr. Rosenzweig's opinion on specific causation fails to satisfy the reliability standard for expert testimony set by Federal Rule of Evidence 702 because it is based on insufficient facts and data and an inadequate differential diagnosis:

Dr. Rosenzweig opines that Plaintiff's injuries occurred because of "characteristics" of the mesh.  (ECF No. 113-9, Aug. 17, 2020 Dep. of Bruce Rosenzweig, M.D. at 194:20-195:5.)  He failed to consider or provide a medically sound basis for ruling out other potential causes, however, including critical aspects of Plaintiff's prior social and medical history:  Plaintiff's admitted 30-year history of habitual use of tobacco and crack-cocaine (*see* Ex. 8, R. Bayless Dep. at 37:5-24, 41:2-7, 47:13-14); Plaintiff's failure to comply with Dr. Jones's post-operative instructions to refrain from sexual intercourse for 12 weeks (*see* ECF No. 113-10, Jones Dep. at 94:8-14); Plaintiff's admitted history of "frequent" bacterial vaginosis pre-dating her 2013 surgery (*see* Ex. 8, R. Bayless Dep. at 50:5-51:17); Plaintiff's pre-existing history of dyspareunia (*see* ECF No. 113-1, COL PLTF 000460-463 (documenting dyspareunia in 2012); and the likelihood that her concurrent hysterectomy could have caused her dyspareunia.

*See* Coloplast's *Daubert* Motion to Exclude the Opinions and Testimony of Bruce Rosenzweig, M.D. (filed concurrently herewith and incorporated herein) (ECF No. 113).  Dr. Rosenzweig also lacks a reliable basis to offer opinions about (1) Plaintiff's prognosis; (2) whether the Restorelle Y IFU contributed to Plaintiff's claimed injuries; (3) whether Plaintiff's Restorelle Y mesh implant degraded and whether such speculative and theoretical degradation caused Plaintiff's complaints; and (4) whether other surgical procedures or non-mesh products are "safer" than pelvic reconstructive surgeries augmented with Restorelle Y.  (*See id.*)

Because Plaintiff has no expert who has opined, or could opine, on general causation, and because the testimony of Plaintiff's lone expert on specific causation is inadmissible, she cannot meet her burden of proving causation as to any of her claims.  As a result, Plaintiff cannot prove, as a matter of law, that her Restorelle Y caused any injury to her.  The Court therefore should grant summary judgment to Coloplast on all of Plaintiff's claims.

123707101.1

### B.  Plaintiff's Failure-To-Warn-Claims[6] Fail as a Matter of Law.

To prevail on her failure-to-warn claims, Plaintiff must prove: (1) the warnings accompanying the Restorelle Y were inadequate; (2) the inadequacy of the warnings proximately caused Plaintiff's injury; and (3) Plaintiff in fact suffered an injury from her Restorelle Y.  *See Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008); *Oliver v. Boston Sci. Corp.*, No. 2:13-CV-01736, 2015 WL 5838506, at *5 (S.D.W. Va. Oct. 5, 2015) (citing *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. 1st DCA 2009) ("To prevail on a claim of failure to warn, a plaintiff must show that the warnings accompanying the product are inadequate, and that the inadequacy of the warnings proximately caused the plaintiff's injury.").

Here, the Court should grant summary judgment on Plaintiff's failure-to-warn claims because: (1) Coloplast's warnings were adequate as a matter of law; and (2) Plaintiff cannot establish proximate causation because (a) Dr. Jones was independently aware of the risks for which Plaintiff now seeks recovery, and (b) there is no evidence that a differently worded warning would have resulted in Dr. Jones not selecting Restorelle Y for Plaintiff.

### 1.      Coloplast's warnings were adequate as a matter of law.

Under Florida's "learned intermediary" doctrine, Coloplast's duty to warn runs only to the Plaintiff's implanting surgeon, Dr. Jones, and not to Plaintiff herself.   *See*, *e.g.*, *Felix v. Hoffman-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1368 (S.D. Fla. 2007).  Therefore, to prevail on her failure-to-warn claims, Plaintiff

---

[6]      This section applies to Plaintiff's claim for strict liability—failure-to-warn (Count IV) and any claim for negligent failure-to-warn that Plaintiff may be alleging in Count I.

123707101.1

must show that Coloplast provided inadequate warnings to Dr. Jones. *See, e.g.*, *Small v. Amgen, Inc.*, 134 F. Supp. 3d 1358, 1366 (M.D. Fla. 2015) (plaintiff must show that manufacturer provided an inadequate warning to prescribing physician to prevail on failure-to-warn claims under strict liability or negligence theory).

A warning is adequate as a matter of law when it is "clear, accurate and unambiguous." *See Felix*, 540 So. 2d at 105. Under the learned intermediary doctrine, the adequacy of medical device warnings must be considered in light of the knowledge of the medical community to which they are directed, not that of patients. *See id.* at 102-05 (warnings not inadequate because they failed to explain the term "teratogenic"); *see also Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990) (warnings not inadequate because they failed to characterize the risk of "bleeding as excessive, continuous, or prolonged."). A warning is adequate when it puts physicians on notice of the possibility that a patient implanted with the medical device may experience the harm or effects of which plaintiff complains. *See, e.g.*, *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1286-87 (M.D. Fla. 2009) ("In determining the adequacy of the warning, the critical inquiry is whether it is adequate to warn the physician of the possibility that the [product] caused the injury alleged by the plaintiff."); *Colville*, 565 F. Supp. 2d at 1321 ("adequacy of the warning is determined by whether the 'warnings were adequate to warn a physician of the possibility that [the medicine] might be causing the condition experienced' by the Plaintiff"); *Beale*, 492 F. Supp. 2d at 1368-70 (holding that a warning is adequate when it places the physician "on notice" of "the factors applicable to [plaintiffs] themselves").

For example, in *MacMurdo*, the Supreme Court of Florida held a prescription medicine's warning was adequate as a matter of law because it warned of the possibility of the adverse event (*i.e.*, abnormal bleeding) experienced by the plaintiff. *See* 562 So. 2d at 683. Although the warning did not describe the exact symptoms suffered by the plaintiff (*i.e.*, excessive, continuous, or prolonged bleeding), the court found that the label generally warned of the adverse event alleged by plaintiff and deemed the warning adequate, finding that "[i]t would be unreasonable to hold [the defendant] liable for not characterizing the bleeding" more specifically. *Id.*, n.4. Thus, a warning is adequate when it warns of the adverse event or risk alleged by the plaintiff. *See Felix*, 540 So. 2d at 105 (affirming summary judgment, holding that "the injuries arising as a result of the failure to heed the warning are identical to those the warning described," *Felix v. Hoffmann-LaRoche, Inc.*, 513 So. 2d 1319, 1321 (Fla. 3d DCA 1987)); *see also McDaniel v. Sofamor Danek Grp., Inc.*, No. 95-1477-CIV-RYSKAMP, 1999 WL 1062136, at *5 (S.D. Fla. Apr. 9, 1999) (warning adequate when "plaintiff complains of [post-use] conditions which are clearly designated as possible adverse effects of the [product's use]").

Consistent with this line of cases, another court applying Florida law held recently that the warnings for a Coloplast surgical mesh implant were adequate as a matter of law and granted summary judgment. *See Nunez v. Coloplast Corp.*, No. 19-CV-24000-SINGHAL/Louis, 2020 WL 2561364, at *3-*4 (S.D. Fla. May 20, 2020). There, the court explained that the IFU "clearly and unambiguously state that 'urinary tract infection,' 'pelvic/urogenital pain,' and 'dyspareunia' are all possible." *Id*. at *7-*8. Thus, the court held

that the warnings were adequate as a matter of law because the IFU warned of the possibility of the injuries alleged by plaintiff. *See id*. This Court should do the same here.

As in *Felix*, *MacMurdo*, and *Nunez*, Coloplast's warnings for Restorelle Y were adequate as a matter of law. Indeed, the IFU in place at the time of Plaintiff's implant surgery provided clear, accurate, and unambiguous language about the possible risks of Restorelle Y and specifically addressed the injuries that Plaintiff now alleges. For example, Plaintiff alleges that, as a result of the Restorelle Y, she suffers from exposure of mesh in the vagina; vaginal bleeding; abdominal and pelvic pain; dyspareunia; and vaginal infections. The IFU that accompanied Plaintiff's Restorelle Y warned of each of these risks:

> Warnings and Precautions:
> …
>
> The implant procedure carries an inherent risk of **infection** and **bleeding**, as do similar urological procedures.
> …
>
> Adverse Effects:
>
> Adverse effects associated with the use of Restorelle Y include: transient local wound irritation, foreign body inflammatory response, hematoma, adhesions, **pain**, **infection**, wound dehiscence, **erosion**, **extrusion**, **exposure**, fistula, nerve damage, contracture, urinary incontinence, voiding dysfunction, defecatory dysfunction, ilecs or small bowl obstruction, **dyspareunia** and procedure failure may occur.

(*See* Ex. 3, Restorelle Y Instructions for Use, June 2012 (emphasis added).)

Thus, Restorelle Y's labeling warned of Plaintiff's alleged injuries and placed physicians "on notice" of the possibility of the very risks about which Plaintiff complains. Therefore, the labeling is adequate as a matter of law. *See, e.g.*, *MacMurdo*, 562 So. 2d at 681-83; *Felix*, 540 So. 2d at 105; *accord Beale*, 492 F. Supp. 2d at 1368-70 (plaintiffs did not

"refute the fact that the warnings clearly establish the factors applicable to themselves regarding [their allegations]"). This Court should therefore grant summary judgment.

### 2. Plaintiff cannot prove proximate causation.

Independently, Coloplast is entitled to summary judgment on Plaintiff's failure-to-warn claims because Plaintiff cannot show that any allegedly inadequate warning proximately caused her injuries. First, Dr. Jones knew of Restorelle Y's potential risks before treating Ms. Bayless, and therefore, any inadequacy in the IFU could not have caused Plaintiff's injuries. Second, even if Dr. Jones had not been aware of those risks, a different warning would not have changed Dr. Jones' prescribing decision because she testified that she neither read nor relied upon the IFU at the time of Plaintiff's surgery.

> *a. Dr. Jones independently knew of the potential risks associated with Restorelle Y before Plaintiff's August 2013 surgery.*

Under the learned intermediary doctrine, an allegedly inadequate warning cannot proximately cause a plaintiff's injury where the prescribing physician has independent knowledge of a risk that the allegedly adequate warning should have communicated. *See Beale*, 492 F. Supp. 2d at 1365 ("the causal link between a patient's injury and the alleged failure-to-warn is broken when the prescribing physician had 'substantially the same' knowledge as an adequate warning from the manufacturer should have communicated to him"); *Felix*, 540 So. 2d at 104 ("any inadequacy in the [drug's] warning could not have been the proximate cause of the [alleged injury]" where "the prescribing physician testified that he fully understood the warnings and also had prior knowledge of the teratogenic propensity of [the drug]").

16

The court's holding in *Colville* is instructive.  There, the plaintiff alleged that she developed osteopenia (a progression of bone loss that leads to osteoporosis) from a prescription medication, and asserted that neither she nor her doctors were warned that use of the medication could cause osteopenia.  565 F. Supp. 2d at 1317.  But plaintiff's prescribing physician testified that at the time she prescribed the medication to the plaintiff, she was indeed aware of the risk of it causing osteoporosis.  *Id.* at 1318.  Accordingly, the court held that the plaintiff had "failed to show that the inadequacy of the manufacturer's warnings was a proximate cause of her osteopenia diagnosis" and entered summary judgment in favor of the defendant manufacturer on plaintiff's failure-to-warn claims.  *Id.* at 1322.

Like the defendant-manufacturer in *Colville*, Coloplast is entitled to summary judgment on Plaintiff's failure-to-warn claims.  Dr. Jones testified unequivocally that, prior to performing the August 2013 surgery, she was independently aware of the risks associated with polypropylene mesh implants from her residency training and past work experience, continuing medical education, and discussions with other practicing urogynecologists, *see* ECF No. 113-10, Jones Dep. at 127:3-24, and she did not need any additional information or warning from Coloplast to know of these risks:

> Q.    You've already testified that you're aware of the risks of exposure?
>
> A.    Yes.
>
> Q.    You're aware of the risk of the need for repeat surgery, right?
>
> A.    Yes.
>
> Q.    You're aware of the risk of dyspareunia, right?
>
> A.     Yes.

123707101.1

> Q.   *You didn't need Coloplast's instruction or warning to tell you that, did you?*
>
> A.   *No.*
>
> ...
>
> Q.   And some of the other possible complications of female pelvic reconstructive surgery would be pain, infection, failure of the procedure, reoccurring incontinence, urinary retention, and bleeding, correct?
>
> A.   Yes.
>
> Q.   And were you aware of all of those risks in August of 2013?
>
> A.   Yes.

(*Id.* at 122:6-17, 128:10-17 (emphasis added).)  In addition, Dr. Jones explained that she also knew of these risks associated with the use of mesh surgical implants in pelvic reconstructive surgery based on safety communications from the FDA:

> Q.   Okay.  You were also aware of the FDA notices regarding surgeries with pelvic mesh in 2008 and 2011?
>
> A.   Yes.
>
> Q.   *Okay. You didn't need Coloplast to repeat those things to you, did you*?
>
> A.   *No*.

(*Id.* at 122:18-23 (emphasis added); *see* Ex. 6, Oct. 20, 2008 Surgical Mesh: FDA Safety Communication at 1 ("The most frequent complications included *erosion through the vagina, infection, pain,* urinary problems and recurrence of the prolapse and/or incontinence.  In some cases, *erosion of the mesh and scarring of the vagina led to discomfort and pain, including pain during sexual intercourse*.  Some patients needed additional surgery to remove the mesh that had eroded into the vagina") (emphasis added); *see also* Ex. 7, July 2011 Urogynecologic

Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse at 7 ("From 2008 to 2010, the most frequent complications reported to the FDA from the use of surgical mesh devices for POP repair included ***vaginal mesh erosion (also called exposure, extrusion or protrusion), pain (including painful sexual intercourse known as dyspareunia), infection***, urinary problems, ***bleeding***, and organ perforation.") (emphasis added).)

Dr. Jones was not only aware of these risks – she also conveyed them, multiple times and through multiple approaches, to each patient for whom she recommended pelvic surgery with synthetic mesh implants, including Plaintiff:

- Dr. Jones prepared laminated documents relaying the 2008 and 2011 FDA warnings and reviewed them with each patient, including with Plaintiff. (*See* ECF No. 113-10, Jones Dep. at 123:2-11.)

- At pre-operative visits, Dr. Jones had her routine "risk/benefit" conversation with Plaintiff and informed her of the possible complications of her hysterectomy and pelvic floor reconstructive surgery. (*Id.* at 33:1-34:7, 85:9-86:14 (Dr. Jones testifying that she discussed risks of bleeding, infections, damages to surrounding organs, urinary retention, mesh exposure, and other risks with Plaintiff); *see also* ECF No. 113-1, May 28, 2013 Encounter Note at COL-RBAYLESS-ORLANDO-000017-18 (Dr. Jones explaining to Plaintiff that the implant surgery could result in "possible complication with hematoma, delayed healing and graft exposure &/or extrusion," "possible pain or discomfort with sexual intercourse, urinary tract infections," and "infection, bleeding, damage to surrounding organs such as bowel, bladder & urethra, prolonging need for urinary catheterization, incomplete bladder emptying, pain with intercourse, poor wound healing, worsening or no change in urinary incontinence and or recurrence of prolapse").)

- Plaintiff also reviewed and executed multiple informed consent documents that set forth the risks of different components of her surgery, including but not limited to, exposure/erosion of mesh, pain with intercourse, delayed healing, and potential requirement of future surgery to repair a complication of a prior surgery. (*See* Ex. 8, R. Bayless Dep. at 95:1-100:10; *see also* ECF No. 113-1, May 28, 2013 Informed Consent and Request For Repair of Relaxation of Pelvic Organs and/or Urinary Incontinence at COL-RBAYLESS-ORLANDO-

000021-22; May 28, 2013 Informed Consent For Anterior Colporrhaphy at COL-RBAYLESS-ORLANDO-000024; and May 28, 2013 Augmentation Graft Consent Form at COL-RBAYLESS-ORLANDO-000026 (warning that "when mesh is used in gynecological surgery, there is a 5-10% chance that this mesh can cause delayed healing and eventually erode into the vagina, requiring a second surgery to remove it." )[7]

This evidence demonstrates that Dr. Jones was independently aware of the risk of potential complications for which Plaintiff now seeks recovery from her medical education, training, experience, and review of safety notices from FDA. (*See* ECF No. 113-10, Jones Dep. at 122:18-23, 127:3-24.) Because Dr. Jones knew, prior to the August 2013 surgery, of the risk of injuries like those purportedly sustained by Plaintiff, Plaintiff cannot prove any alleged failure-to-warn proximately caused her injuries. Therefore, Coloplast is entitled to summary judgment on Plaintiff's strict liability and negligent failure-to-warn claims.

> b. *A different warning from Coloplast would not have changed Dr. Jones's prescribing decision.*

To establish proximate cause for failure-to-warn claims, a plaintiff also must present evidence from her physician that a differently worded warning would have resulted in that physician not prescribing the drug or device in question. *See Mason*, 27 So. 3d at 76. For example, in *Mason*, the plaintiff sued a manufacturer and alleged that it failed to adequately warn that its acne prescription medication caused inflammatory bowel disease ("IBD") and that the defective warning caused him injuries. *See id*. The Florida intermediate appellate court held that proximate cause was lacking and reversed the judgment for plaintiff because he

---

[7]     In fact, Ms. Bayless acknowledged that she had an opportunity to read these consent forms and ask questions before proceeding with the surgery. (*See* Ex. 8, R. Bayless Dep. at 95:17-99:1 (testifying that she would not have signed Dr. Jones's consent forms unless she reviewed them first).)

failed to present any evidence that a different warning would have changed his physician's prescribing decision:

> [The prescribing physician] testified that even if the warning label contained all of the information suggested by Appellee's expert, he would still have prescribed the medication for Appellee. ***Thus, any inadequacies in Accutane's warning label could not have been the proximate cause of Appellee's injury because Dr. Fisher understood that there was a possibility that use of the drug could lead to Appellee developing IBD and he made an informed decision to prescribe the drug for Appellee despite this risk.*** Because Appellee presented no evidence to establish proximate cause, the trial court erred in denying Appellants' motion for a directed verdict.

 (*Id.* at 77 (emphasis added).)

Here, as in *Mason*, there is no evidence that a differently worded warning would have caused Dr. Jones not to prescribe or implant Plaintiff's Restorelle Y. Rather, Dr. Jones testified that she has performed "hundreds" of procedures with Restorelle Y mesh and "had good success" with it. (ECF No. 113-10, Jones Dep. at 81:15-82:9.) She explained that "Restorelle Y surgical implants are safe and effective treatment for prolapse repair in an appropriate patient, and she "would still use Restorelle Y in an appropriate patient today." (*Id.* at 146:4-23.) She was fully aware of the risks associated with Restorelle Y at the time of Plaintiff's implant surgery, including those Plaintiff claims to have experienced, and chose to proceed with the surgery based on her medical judgment that the benefits of Restorelle Y exceeded its risks. (*Id.* at 84:3-10, 121:16-122:23, 127:3-24.) Indeed, she did not review the IFU for Restorelle Y at the time of Plaintiff's surgery (and had not done so in more than a year and a half before the surgery), and she did not rely on the IFU to inform her of the risks associated with the use of Restorelle Y. (*Id.* at 121:16-122:23) (testifying that she "didn't need Coloplast's instruction or warning" to inform her of risks associated with Restorelle Y).)

21

Because she has no evidence that a differently worded warning would have changed Dr. Jones' decision to use the Restorelle Y, Plaintiff cannot establish proximate cause and her failure-to-warn claims fail as a matter of law.  Therefore, summary judgment should be entered on those claims (Counts I and IV).

### C.  Plaintiff's "Discovery Rule, Tolling and Fraudulent Concealment" Claims Fail as a Matter of Law.

To the extent Plaintiff is pursuing any part of her claim alleging "Discovery Rule and Tolling," *see* Short Form Compl. (ECF No. 1) ¶ 13 ("Count VIII – Discovery Rule, Tolling and Fraudulent Concealment"), no such claim exists under Florida law. The discovery rule is simply a legal principle whereby "the statute of limitations period does not begin to run until 'the date that the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 748 F. App'x 212, 216 (11th Cir. 2018) (quoting Fla. Stat. § 95.031(2)(b)). Tolling, similarly, simply means "to stop the running of or "to abate" the limitations period.  Black's Law Dictionary (10th ed. 2014). Because "Discovery Rule" and "Tolling" are not viable claims under Florida law, summary judgment is warranted.

Additionally, to the extent that Plaintiff intends to pursue a standalone claim for fraudulent concealment (*see* Count VIII), summary judgment should be entered in favor of Coloplast.  To sustain this cause of action, Plaintiff must establish:

> (1) a misrepresentation or omission of a material fact; (2) (a) knowledge of the representor of the misrepresentation, (b) representations made by the representor without knowledge as to either their truth or falsity, or (c) representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; *and* (4) resulting injury to the party acting in justifiable reliance on the representation.

123707101.1

*See Livingston v. H.I. Family Suites, Inc.*, No. 605CV860ORL19KRS, 2006 WL 1406587, at *7 (M.D. Fla. May 22, 2006); *see also Albertson v. Richardson-Merrell Inc.*, 441 So. 2d 1146, 1149-50 (Fla. 4th DCA 1983).

Here, Plaintiff cannot establish these elements. For example, the record is devoid of any evidence that Coloplast intentionally misrepresented or omitted any specific material facts regarding the Restorelle Y to Dr. Jones. Nor is there any evidence that Plaintiff or her implanting physician justifiably relied upon such intentional misrepresentation or omission prior to Plaintiff's August 2013 surgery. To the contrary, Dr. Jones testified that she did not need any additional information from Coloplast to understand the risks associated with Restorelle Y before proceeding with the surgery. (*See* ECF No. 113-10, Jones Dep. at 122:1-23.) Therefore, because Plaintiff cannot establish all essential elements of a fraudulent concealment cause of action, summary judgment should be entered. *See Fowler v. Smith & Nephew Richards, Inc.*, No. 97-1380-CIV-J-10B, 1999 WL 1132967, at *8 (M.D. Fla. Sept. 27, 1999) (granting summary judgment for manufacturer of prescription medical device because "Plaintiffs have not presented any evidence of statements which may constitute fraud or negligent misrepresentation").

### D. Plaintiff's Claim for Punitive Damages Lacks Sufficient Proof.

Under Florida law, a "defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. Ann. § 768.72 (West); *see Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010) (quoting Fla. Stat. § 768.72(2)). In turn, the proof of punitive damages also must relate to, or have a nexus with,

the plaintiff's injury.  *See In re Fosamax*, 647 F. Supp. 2d at 284-5 (holding that "Plaintiff was not 'exposed' to" punitive damages evidence that post-dated plaintiff's injury or involved alleged marketing improprieties); *see also Smith v. Vining*, 407 So. 2d 1048, 1049 (Fla. 3d DCA 1981) ("punitive damages must bear a relationship to the fact of injury or invasion of legal right").  Courts distinguish between evidence of liability versus evidence of punitive damages when assessing proof of punitive damages; evidence that may "create a question of material fact as to whether [defendant] should have known about the risk" may "fall well short of being clear and convincing evidence that [defendant] had actual knowledge of this risk."  *In re Fosamax*, 647 F. Supp. 2d at 294 (emphasis in original); *see also Tiller v. Ford Motor Co.*, 2006 WL 166530, at *3 (M.D. Fla. Jan. 21, 2006).

Applying Florida law in a case involving another Coloplast surgical mesh implant, the *Nunez* court recently granted summary judgment on punitive damages in Coloplast's favor.  *See Nunez*, 2020 WL 2561364, at *11-*14.  The *Nunez* Court explained:

> ***Defeating a motion for summary judgment on a claim for punitive damages is an extraordinarily high bar***.  Plaintiff, bearing the burden of proof on her claim, must meet the heightened standard of clear and convincing evidence in proving a heightened level of culpability in gross negligence.  And, because Plaintiff bears the burden of proof in her claim for punitive damages, Coloplast's burden in its motion for summary judgment is relatively low.  ***Coloplast is 'not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.'  It can simply 'point out' that Plaintiff has failed to present sufficient evidence to supports its claim at trial***.

*Id*. at *12 (emphasis added).  The court reasoned that claims about what Coloplast *should have done* or *should have known* did not demonstrate any "actual knowledge" or "conscious disregard or indifference" to plaintiff's health and safety. *Id*. at *13-*14 (emphasis in original).  Thus, the court held that plaintiff failed to meet the heightened standard of "clear and

convincing evidence" that Coloplast acted with intentional misconduct or gross negligence and granted summary judgment on punitive damages. *Id.*

Here, like in *Nunez*, the claim for punitive damages fails because Plaintiff lacks any evidence that suggests she can prove by "clear and convincing evidence" that Coloplast acted with "intentional misconduct or gross negligence" with regard to Restorelle Y. *Id.*; *see also In re Fosamax*, 647 F. Supp. 2d at 283-85. Plaintiff also provides no evidence to prove by clear and convincing evidence that Coloplast possessed, and failed to share with Dr. Jones, "'actual knowledge' of the 'high probability' that [the Restorelle Y] would cause [Plaintiff] to develop [her alleged injuries]." *Id.* at 284. Accordingly, summary judgment is appropriate.

## IV.   CONCLUSION

For each of these reasons, the Court should grant Coloplast's Motion for Summary Judgment and dismiss all of Plaintiff's claims as a matter of law.

/s/ Edward W. Gerecke
Edward W. Gerecke
Florida Bar Number 328332
David J. Walz
Florida Bar Number 697273
Caycee D. Hampton
Florida Bar Number 0100922
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133
Email: egerecke@carltonfields.com
        dwalz@carltonfields.com
        champton@carltonfields.com

Johanna W. Clark
Florida Bar Number 196400

123707101.1

CARLTON FIELDS, P.A.
200 S. Orange Ave., Suite 1000
Orlando, FL 32801-3400
Telephone: (407) 849-0300
Fax: (407) 658-9099
Email: jclark@carltonfields.com

W. Ray Persons
Florida Bar Number 101747
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax:  404) 572-5100
Email: rpersons@kslaw.com

*Attorneys for Defendant Coloplast Corp.*

26

123707101.1