# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CASE NO.: 6:20-cv-00831-RBD-GJK

RAEANN BAYLESS,

      Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION,
and COLOPLAST CORP.,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BOSTON SCIENTIFIC'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Raeann Bayless, by and through undersigned counsel, hereby files this Response in Opposition to Defendant, Boston Scientific Corporation's ("Boston Scientific"), Motion for Summary Judgment, and in support thereof, states as follows:

### STATEMENT OF MATERIAL UNDISPUTED FACTS

1.     Ms. Bayless had the Restorelle Y implanted to treat symptoms of pelvic organ prolapse and the Advantage Fit implanted to treat symptoms of stress urinary incontinence on August 9, 2013.  *See* [Doc.114-2 – Plaintiff Fact Sheet, at 2, 6].

2.     Both the Restorelle Y and the Advantage Fit are made of the same material— polypropylene.  *See* Bruce Rosenzweig General Expert Report *pertaining to* Boston Scientific Products (attached hereto as "**Exhibit A**"); Bruce Rosenzweig General Expert Report *pertaining to* Coloplast Products (attached hereto as "**Exhibit B**").

3.      Polypropylene causes the same adverse reactions in women.  *Compare* Ex. A, at 2 ("The polypropylene mesh used in Boston Scientific's . . . Advantage Fit . . . is not suitable for its intended application as a permanent prosthetic implant for stress urinary incontinence because it was not made to be implanted in the human body; it degrades over time, causes chronic foreign body reactions, fibrotic bridging, mesh contracture/shrinkage, fraying, deformation, roping, rolling and curling of the mesh); *with* Ex. B, at 3 ("THE COLOPLAST TRANSVAGINAL PELVIC ORGAN PROLAPSE MESH PRODUCTS ARE NOT SUITABLE FOR THEIR INTENDED APPLICATION AS A PERMANENT PROSTHETIC IMPLANT FOR PELVIC ORGAN PROLAPSE BECAUSE THEY DEGRADE OVER TIME, THEY DEFORM INCLUDING MESH CONTRACTURE/SHRINKAGE AND ROPING/WRINKLING/FOLDING, CAUSE CHRONIC FOREIGN BODY REACTIONS, FIBROTIC BRIDGING, BIOFILM FORMATION AND INFECTIONS, AND THE PORES COLLAPSE UNDER TENSION RESULING IN PERMANENT AND IRREVERSIBLE HARMS.").

4.      Ms. Bayless' implanting surgeon, Dr. Kathy Jones, did not know that the manufacturer of the polypropylene used to make the Advantage fit states: "Do not use this material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues."  Deposition of Kathy Jones, M.D., 09/12/2018, at 43:10–45:6 (attached hereto as "**Exhibit C**").

5.      Dr. Jones would have expected Boston Scientific to share that information with her, and if it did, she likely would not have used the Advantage Fit.  *Id.*

6.      Dr. Jones would have would have relayed that information to Ms. Bayless if she knew it. *Id.*

2

7.      After the implantation of the Restorelle Y and Advantage Fit mesh, Ms. Bayless was diagnosed with "vaginal erosion due to surgical mesh."  *See* Rosenzweig Case-Specific Expert Report, at 7 (attached hereto as "**Exhibit D**").

8.      As a result of the mesh, Ms. Bayless' has and continues to suffer from mesh erosion, vaginal bleeding, infection, nausea off and on, constipation, pelvic and vaginal pain, and dyspareunia.  Ex. B, at 7; *see also* Deposition of Bruce Rosenzweig, M.D., 08/17/2020, at 14:21–15:1 (attached hereto as "**Exhibit E**").

9.      On February 5, 2016, Plaintiff initiated this product liability action in the Southern District of West Virginia by Short Form Complaint for coordinated and consolidated pretrial proceedings in the multi-district litigation ("MDL").  [Doc. 1].

## LEGAL ARGUMENT

I.      <u>Genuine Issues of Material Fact Exist Concerning Dr. Rosenzweig's Specific Causation Opinions and Testimony.</u>

Boston Scientific largely takes issue with the fact that Dr. Rosenzweig's testified that the Advantage Fit was a "minimal contributor" or a "secondary" cause to Coloplast's Restorelle Y mesh.  *See* [Doc. 110]; *see also* Ex. E, at 209:19–22 ("The painful intercourse would more likely than not be more likely associated with the Restorelle Y-mesh and a minimal contributor from the Advantage Fit."); *see also id.* at 222:9–11 ("More likely than not the Restorelle Y-mesh is the primary cause and the Advantage Fit is the secondary cause.").  But the fact that Dr. Rosenzweig believes that the Restorelle Y contributed more to Ms. Bayless' injuries does not completely exonerate Boston Scientific from liability.

Indeed, Dr. Rosenzweig clearly states in his deposition that *both* products contributed to Ms. Bayless' injuries.  Ex. E, at 210:11–211:8 (emphasis added):

> Q. Okay. So, you're broadly claiming that because both implants contain polypropylene, they're the cause of Ms. Bayless' injuries?
>
> .   .   .
>
> A. I have reviewed and relied upon my general causation reports and my prior general causation testimony, and that is a very – the answer to that question is not a yes-or-no question. It is a very broad and detailed question that is in my general causation report. I did do a very detailed differential diagnosis, most of which we discussed today, on how I ruled out other causes, such as her history of sexual abuse, her episiotomy with a tear, her history of STDs, her smoking, her use of crack cocaine, her hysterectomy and the other medical conditions that I've described in my report, *which leads me to the opinion that her injuries were* **caused by the mesh implants**, *the Restorelle Y-mesh primarily and the Advantage Fit secondarily.*

*See also id.* at 294:5–14 ("Q. So, you would agree with me, Doctor, that more likely than not the erythema is related to the Restorelle Y and not the Advantage Fit, right? A. *Well, that same process would be going on with the Advantage Fit.* The Advantage Fit is smaller pore, heavier weight than the Restorelle, so it's more likely than not undergoing a chronic foreign body reaction, chronic inflammatory reaction.") (emphasis added).

## II.   Plaintiff Has a Viable Failure to Warn Claim.

A defendant is strictly liable for its failure to warn where a plaintiff proves that the defendant "(a) is a manufacturer or distributor . . . and (b) did not adequately warn of a particular risk that was known or knowable . . . at the time of manufacture and distribution." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1335 (M.D. Fla. 2015) (internal quotation omitted). First, Defendant's warning of the Advantage Fit was inadequate as they were provided to Dr. Kathy Jones—the "learned" intermediary. Second, because Dr. Jones testified that she would want to know about further warnings from the manufacturer and would have likely changed her course of prescription if given those warnings, Plaintiff establishes causation for a failure to warn claim.

### A. Defendant Has a Heightened Summary Judgment Burden on a Learned Intermediary Defense Pursuant to Florida Law.

4

Under Florida law, the learned intermediary doctrine is a fact-intensive affirmative defense as to which Boston Scientific bears the burden of proof at trial. *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626, *3 (M.D. Fla. June 27, 2005). The learned intermediary doctrine says that "the failure of the manufacturer to provide the physician with an adequate warning of the risks associated with a [drug] is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated." *Horrillo v. Cook, Inc.*, 2012 WL 6553611 *3 (11th Cir. Nov. 7, 2012) (citing *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995)). The manufacturer bears the burden to show that the treating physician had "substantially the same knowledge" as the manufacturer or the better warning. *Id.* at *3-4. Further, the manufacturer must show that the physician "would have taken the same course of action even with the information the plaintiff contends should have been provided." *Brown v. Roche Laboratories, Inc.*, 567 Fed. Appx. 860, 864 (11th Cir. 2014). *See Koho v. Forest Labs. Inc.*, 17 F. Supp. 3d 1109, 1120 (W.D. Wash. 2014) (granting plaintiff's partial motion for summary judgment on the learned intermediary affirmative defense where the physician stated he would have taken different steps with a different warning).

Because Defendant bears the burden of proof, it cannot obtain summary judgment merely by pointing to an alleged absence of genuine issue of fact. Instead, Boston Scientific must affirmatively prove every element of its defense "beyond peradventure" by adducing "evidence so strong no reasonable jury would be free to disbelieve it" as to each element. The Plaintiff, on the other hand, has no burden to negate the existence of evidence on this affirmative defense, and Plaintiff is entitled to have every fact and inference construed most strongly in their favor. *Avirgan v. Hull,* 691 F. Supp. 1357, 1368 (S.D. Fla. 1988); *see also Darville v. Lyons,* 2013 WL 237795, *2 (S.D. Fla. Jan. 22, 2013).

As set forth below, Boston Scientific has not even remotely satisfied its substantial burden of proof on this motion, and as such, summary judgment should be denied.

**B. The Learned Intermediary Doctrine Does Not Shield Boston Scientific From Liability Because the Warnings They Provided Were Inadequate.**

Although the learned intermediary doctrine applies generally to failure to warn cases, this doctrine is not a complete defense where a manufacturer does not adequately warn the physician of the potential risks involved with its product.  Physicians can be learned intermediaries only when they have received adequate warnings. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994) (citing *Amore v. G.D. Searle & Co.*, 748 F. Supp. 845, 850 (S.D. Fla. 1990)).  Therefore, the learned intermediary doctrine will not shield a drug or device manufacturer from liability for inadequate warnings to the physician. *Tracy v. Merrel Dow Pharm., Inc.*, 569 N.E.2d 875, 878 (Ohio 1991).

Moreover, many courts have adopted this sort of language limiting the learned intermediary doctrine's applicability to cases where the physician was adequately warned.  *See Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 207 (5th Cir. 2008) ("[T]he doctrine excuses a drug manufacturer from warning each patient who receives the product when the manufacturer ***properly*** warns the prescribing physician of the product's dangers.") (emphasis added) (internal citation omitted); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 624 F. Supp. 2d 396, 419 (E.D. Pa. 2009) ("the learned intermediary defense simply does not apply where a plaintiff alleges that the manufacturer filed to adequately warn doctors of the danger of the drug"); *Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23, 117 Cal.Rptr.3d 791, 797–98 (Ct. App. 2010) (finding the learned intermediary doctrine, "where it applies at all, applies only if a manufacturer provided adequate warnings to the intermediary"); *Gonzalez v. Bayer Healthcare Pharmaceuticals, Inc.*, 930 F. Supp. 2d 808, 820 (S.D. Tex. 2013) ("Even though Bayer is not liable under the learned

intermediary doctrine to Plaintiff for failure to warn her as end user about the risks of its Mirena IUD, it may still be liable if its warning to the physician intermediary at Planned Parenthood was not adequate and she sustained injuries as a result of using it."); *Patteson v. AstraZeneca, LP*, 876 F. Supp. 2d 27, 34 (D.D.C. 2012) ("As long as the drug manufacturer properly warns a prescribing physician of the dangerous propensities of its product, the manufacturer is excused from warning each patient; . . . *[i]f, however, the warning to the intermediary is inadequate* or misleading, the *manufacturer remains liable for injuries sustained by the ultimate user*.") (emphasis added) (internal quotation omitted).

Even more compelling is the fact that Defendant's own case law supports the premise that although the learned intermediary doctrine applies, the next step is considering whether the warning to the "learned intermediary" was adequate. *See Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990) ("Therefore, we believe the more crucial question is whether the warnings were adequate to warn a physician of the possibility that [the drug] might causing the condition experienced by [plaintiff]."); *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1368 (S.D. Fla. 2007) ("The question, then, is whether the warning provided to the physician is adequate.").

Consistent with this line of cases, the Southern District of Florida—in a virtually identical case against Boston Scientific involving transvaginal mesh—held that there were "genuine disputes about the adequacy of the safety warnings the Defendant provided to [plaintiff's physician]—and relatedly, whether the lack of additional warnings proximately caused the Plaintiff's injuries.  Because these questions must be left to a jury, the Court hereby **DENIES** the Defendant's Motion for Summary Judgment" on the failure to warn Count. *Goodnight v. Boston Sci. Corp.*, Case No. 0:18-cv-62370-RKA [Doc. 93], at 7–8 (S.D. Fla. Jan. 21, 2020).

Because Boston Scientific failed to provide sufficient warnings, Dr. Jones cannot be a "learned intermediary" in the first place.

> i.   *Dr. Jones' Testimony Concerning a Better Warning Precludes Summary Judgment.*

Under failure to warn law, summary judgment is improper in cases where (1) the plaintiff proffers expert testimony on the adequacy issue; or (2) where the prescribing physician would not have taken the same course of action even with the knowledge of the risk that the adequate warning should have communicated.  That the manufacturer warned of the adverse event complained of is not outcome determinative.  *See Eghnayem v. Boston Sci. Corp.*, 2014 WL 5460605 * 5 (S.D. W.Va. Oct. 27, 2014) (denying summary judgment though the label warned of the adverse events complained of because "that alone is not sufficient to sustain a motion for summary judgment," where plaintiff presented evidence the risks described were minimized).

Further, plaintiffs will defeat a defendant's motion for summary judgment on a failure to warn claim where the treating physician "testified that he changed his treatment practices once he was aware of the [product] risk."  *Sanchez v. Boston Sci. Corp.,* 38 F. Supp. 3d 727, 733 (S.D. W.Va. 2014) (quoting *Georges v. Novartis Pharm. Corp.*, 988 F. Supp. 2d 1152, 157–58 (C.D. Cal. 2013)).  In other words, if Dr. Jones knew more information on the occurrence of Boston Scientific's polypropylene mesh product adverse events, she would have considered this information and provided this information to Ms. Bayless.  As a result, Ms. Bayless may not have chosen to follow through with the surgery.  Specifically, Dr. Jones testified:

> Q.   Doctor, if the medical device manufacturer was told by the company that made the polypropylene not to use the polypropylene in medical applications involving permanent implantation in the human body, or permanent contact with internal body fluids or tissues, is that something you would want to know prior to implanting the mesh?
>
> .   .   .

A.   Certainly, I would want to be -- if there was some type of detrimental problem, *yes, I certainly would want to be informed*.

Q.   Okay.  Would that bear on your – but specifically, if the polypropylene manufacturer told Boston Scientific not to use the polypropylene in medical applications involving permanent implantation in the human body, or permanent contact with internal body fluids or tissues -- that specific statement -- would you want to know that prior to implanting mesh in someone like Ms. Bayless?

                    .     .     .

A.   Again, if that was going to -- if there was an absolute direct causation of harm related to the use of polypropylene – and that's -- I'm assuming you're talking about all types of polypropylene, not specifically to transvaginal mesh -- then yes, I'd want to be informed.

                    .     .     .

Q.   How would that bear on your decision to implant the mesh?

                    .     .     .

A.   If a product warning has been placed that it is unsafe for human use, then yes, I would want to be informed.  And *I would, then, inform my patient that it's been found not to be safe to be placed in humans.  And I likely would not use that product*.

Ex. C, Jones Dep. Tr., at 43:10–45:6 (emphasis added).  This testimony, in and of itself, is more than sufficient to survive Defendant's motion for summary judgment.

ii.   *The Question of Adequacy of a Warning Is an Issue for the Jury.*

Notwithstanding, courts have found that a failure to warn about the rate or severity of potential injury creates a jury question over the adequacy of warnings.  *See Watkins v. Ford Motor Co.,* 190 F.3d 1213, 1220 (11th Cir.1999) ("The question that must be answered by the fact finder is whether the warning given was sufficient or was inadequate because it did not provide a complete disclosure of the existence and extent of the risk involved.") (internal quotation omitted); *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.,* 711 F. Supp. 2d 1348, 1377 (M.D. Ga. 2010) (holding that there was "a genuine issue of material fact as to whether such complications were indeed 'very rare' where a medical device manufacturer's warning stated that the plaintiffs' injuries could occur "very rarely."); *Sands v. Kawasaki Motors Corp.,* No. CV608–009, 2009 WL 3152859, at *5 (S.D. Ga. Sept. 30, 2009) (holding that jury was not

9

precluded from finding that a manufacturer failed to warn the user "of both the extent of the danger and the severity of any injury"); *Adams v. G.D. Searle & Co.*, 576 So. 2d 728, 731 (Fla. 4th DCA 1991) (reversing trial court's grant of summary judgment on failure to warn claim in case involving implantable IUD, holding that adequacy of warning was a question of fact for a jury).

Furthermore, merely including a laundry list of potential complications does not satisfy a manufacturer's obligation as a matter of law in Florida.  In *Amore v. G.D. Searle & Co.*, 748 F. Supp. 845 (S.D. Fla. 1990), the plaintiff claimed her pelvic inflammatory disease caused by a Cu-7 IUD device prevented her from becoming pregnant.  The court noted that the patient brochures provided with the device contained an express warning that pelvic infection could decrease the chance or prevent pregnancy altogether.  *Id.* at 851.  Even despite the fact that this pregnancy risk was specifically listed in the product's warnings, the *Amore* court properly held that the adequacy of the warning was for the jury because the warning contained qualifying language, and based on the plaintiffs' experts' testimony that the warning failed to disclose the defective nature of the product, the causal relationship between the product and the stated risks, as well as the "severity of the hazards" and "gravity and seriousness of the consequences" associated with the product.  *Id.* at 852; *see also Davis v. C.R. Bard, Inc.*, 2012 WL 6082933, *7–8 (E.D. Mich. Dec. 6, 2012) ("While the warning in the . . . filter's information packet did disclose fracture as a risk, it did not provide any estimation of the magnitude of said risk and, in fact, downplayed the risks by saying that 'most cases of fracture' did not result in significant harm to the patient."); *Barrow v. Bristol-Myers Squibb Co.*, 1998 WL 812318 (M.D. Fla. Oct. 29, 1998) (even though the defendant's package insert and the doctor's consent from both contained a warning regarding capsular contracture, and although her implanting surgeon specifically discussed that potential

complication with her, the court held that the learned intermediary doctrine did not bar plaintiff's claims).

As the above-cited case law amply demonstrates, Defendant's contention that merely listing a complication that the plaintiff suffered proves the adequacy of the warning is wrong as a matter of law.  Similar to several of the cases above, Boston Scientific fails to include any data or information regarding the frequency, extent, duration, or severity of the risks, and also fails to even identify the known correlation between defective design characteristics and the frequency and severity of complications.  Instead, like the deficient warnings in *Amore* and *Davis*, Boston Scientific understates the risks that are listed by including qualifying language that the potential adverse reactions listed are those that merely "been reported" in the past.  *See* Advantage Fit DFU, at 4 [Doc. 110-2].  As held in *Amore* and *Davis*, this sort of minimizing disclaimer renders the entire statement inadequate.

What's more, Defendant never warned any doctor or patient that it was utilizing a material that was ***expressly prohibited*** by its supplier from being used for permanent implantation in human.  *See* Marlex HGX-030-01 MSDS (attached hereto as "**Exhibit F**").  That fact, in and of itself, should preclude summary judgment for Boston Scientific on the adequacy of its warning. *See, e.g., Zeigler v. Clowhite Co.*, 234 Ga. App. 627, 629 (1999) (finding the failure to include warning on product label that was included in separate MSDS for chemical component precluded summary judgment on failure to warn and punitive damages claims).

Like in *Barrow*, Defendant never disclosed the fact that it had never conducted any testing to determine the potential for degradation of polypropylene in the body or the effects thereof. (BSCM05200015632 – Feb. 2012 e-mail chain stating "We have not completed any testing in regards to evaluating the breakdown of polypropylene mesh in vivo.").  In spite of explicit

cautionary provisions in the MSDS for the raw material used to manufacture these products—which, again, was expressly prohibited for human implantation—Boston Scientific never warned any doctor or any patient that the material may react to oxidizing agents, which are known to exist in the body. (Ex.F, Marlex HGX-030-01 MSDS, Section 10 "Stability and Reactivity" and Section 11 "Toxicological Information").

As plainly established above, there are abundant facts to create a genuine issue of material fact regarding the adequacy of the Boston Scientific's warnings, and Defendant's summary judgment motion should be denied.

### C.  Plaintiff Establishes Causation on Her Failure to Warn Claim.

The hurdle to prove causation in a failure to warn claim is not a high one.  *See In re Trasylol Prod. Liab. Litig.*, MDL-1928, 2011 WL 2117257, at *4 (S.D. Fla. May 23, 2011) ("For failure to warn claims, as here, Plaintiff must produce *some evidence* that an adequate warning would have been read and *heeded*, and the injury would have been avoided.") (emphasis added); *Chase v. Kawasaki Motors Corp.*, 140 F. Supp. 2d 1280, 1287–88 (M.D. Ala. 2001) (same).

### i.       Dr. Jones Relies on Boston Scientific to Provide a Proper Warning.

"To prove causation in a . . . failure to warn case, it is sufficient to present testimony that purchasers would have avoided the risk of harm had they been told of the relevant danger."  *In re Levaquin Prod. Liab. Litig.*, 700 F.3d 1161, 168 (8th Cir. 2012).  And, in fact, Dr. Jones, in her deposition, does just that.  When asked if she would want to know if polypropylene should not be implanted in the human body or should not have contact with certain body fluids, Dr. Jones said, "Yes, I certainly would want to be informed."  Ex. C, at 43:10–45:6.

It is Defendant's duty to inform the medical community of all known risks and complications of its device, and there are many ways in which Dr. Jones could have been advised

by Boston Scientific of the true risks and dangers of the Advantage Fit.  If Boston Scientific truthfully reported what it knew about the Advantage Fit's risks and complications, there would have been dear doctor letters, medical articles, and studies relating to these complications.

Based on Dr. Jones's own testimony—that she likely would not even use polypropylene mesh if told it should not be implanted permanently in the human body—an adequate and complete warning from Defendant would have changed the way Dr. Jones prescribed polypropylene mesh. Thus, Defendant's causation argument should be rejected.

> ### ii.     The MDL Court Has Continuously Denied Summary Judgment where Mesh Manufacturers Argued the Plaintiff Could Not Prove Causation.

Defendant claims that Plaintiff is unable to support the requirements of a failure to warn claim—specifically, that there is no evidence proving Dr. Jones ever read or relied on the product warnings.  However, previous motions for summary judgment filed by Boston Scientific and subsequently ruled on by Judge Goodwin have already determined this issue in favor of Plaintiff.[1] This Court should be guided by the very same analysis as *Sanchez* on this matter:

> Further, there is at least a dispute of fact whether Dr. Wiltchik relied on the DFUs accompanying the Pinnacle device.  Dr. Wiltchik testified that she would not have used the Pinnacle device had the Pinnacle DFU characterized dyspareunia as a '**warning**/potential complication' rather than as an "adverse event."  Dr. Wiltchik also stated that the Pinnacle DFU did not **warn** about the rates of certain complications, including pain, infection, erosion and exposure of the **mesh**, **failure** of the implantation procedure, and recurrence of prolapse and incontinence.  She then testified that she wanted to know this information because it would affect her 'risk/benefit analysis' in prescribing the Pinnacle device.  Accordingly, I **FIND** that

---

[1] *Tyree v. Boston Scientific Corp.*, 2014 WL 5359008, *4 (S.D. W.Va. Oct. 20, 2014) ("The plaintiff has presented sufficient evidence on the inadequacy of BSC's warnings and on the existence of proximate cause to show there is a genuine dispute of material fact."); *Williams v. Boston Scientific Corp.*, 2016 WL 1448860, *5 (S.D. W.Va. Apr. 12, 2016) (finding that "genuine disputes of material fact exist with regard to whether BSC's warning was adequate . . . [t]herefore, BSC's Motion for Summary Judgment on Ms. William's strict liability for failure to warn claim is **DENIED**."); *Eghnayem v. Boston Scientific Corp.*, 2014 WL 5460605, *6 (S.D. W.Va. Oct. 27, 2014) (same); *Jimenez v. Boston Scientific Corp.*, 2016 WL 1448863, *4 (S.D. W.Va. Apr. 12, 2016) (same); *Nava v. Boston Scientific Corp.*, 2016 WL 1448869,*4 (S.D. W.Va. Apr. 12, 2016) (same); *Allen v. Boston Scientific Corp.*, 2015 WL 5838511, *5 (S.D. W.Va. Oct. 5, 2015) (same); *Wolford v. Boston Scientific Corp.*, 2015 WL 5838504, *5 (S.D. W.Va. Oct. 5, 2015) (same); *Waltman v. Boston Scientific Corp.*, 2016 WL 1436681, *3 (S.D. W.Va. Apr. 11, 2016) (same).

> there is a genuine dispute of fact whether inadequate **warnings** on the Pinnacle
> DFU caused the plaintiffs' injuries.

*Sanchez*, 38 F. Supp. 3d at 735–36 (internal citations omitted); *see also Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 85, Cal. Rptr. 3d 299, 308–09 (Ct. App. 2008) (holding that where a plaintiff produces evidence that the prescribing physician "probably read" the manufacturers warnings, it creates a dispute of fact as to whether the warnings were "a substantial factor" in his prescribing decision).  For this reason alone, summary judgment should be denied in this case.

Additionally, [t]he plaintiffs must prove that [the prescribing physician] . . . would have acted differently had she received adequate warnings." *Sanchez,* 38 F. Supp. 3d at 735; *see also Motus v. Pfizer, Inc.*, 358 F.3d 659, 661 (9th Cir. 2004) (holding summary judgment inappropriate where there is evidence that "stronger warnings would . . . have altered the conduct of the prescribing physician.").  Once again, Dr. Jones has testified that she would have acted differently. In fact, she testified that she likely would not use polypropylene mesh if she heard about some of its flaws and ways in which it should not be used.  *See* Ex. C, at 43:10–45:6.

Despite Defendant's contentions here, there is at the very least a dispute of fact as to whether Dr. Jones was adequately informed of the risks—which is all that is needed to defeat summary judgment.

III.    **<u>Florida Law Governs Plaintiff's Punitive Damages Claim Because as Many Court's Held in Vaginal Mesh Cases Against Boston Scientific, Massachusetts Does Not Have a More Significant Relationship to the Issue of Punitive Damages than the Forum State.</u>**

A. **The Conflict of Law Factors Favor Applying Florida's Punitive Damages Law.**

In this case, subject matter jurisdiction rests on diversity.  Therefore, Florida state law controls substantive issues.  In *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980), the Florida Supreme Court announced the approach for a choice-of-law questions in tort cases

follows the "significant relationship test" as set forth in the Restatement (Second) of Conflict of Laws §§ 145-146 (1971):

### § 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

### § 146. Personal Injuries

In an action for a personal injury, *the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship* under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The *Bishop* court reiterated the language set forth in § 146 of the *Restatement*, noting that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Bishop*, 389 So. 2d at 1001. Thus, the Court is bound to apply Florida law to the issue of punitive damages "'unless, with respect to [that] particular issue, some other state has a more significant relationship.'" *Id.* (emphasis omitted) (quoting *Restatement (Second) of Conflict of Laws* § 146 (1971)).

### i.    *Section 145 Factors Favor Applying Florida Law.*

The four factors of § 145 strongly favor Florida law.  *First*, Ms. Bayless was indisputably injured in Florida.

*Second*, while Boston Scientific claims that all the alleged wrongdoing occurred in Massachusetts, Defendant sold its product nationally, thereby injecting itself in Florida. Boston Scientific sold its device in Florida and received payment from Florida residents. Thus, while some of Defendant's corporate decisions that caused harm were made in Massachusetts, wrongdoing certainly occurred in Florida. In failing to timely update the medical community about mesh erosion and the frequency and severity of many other adverse events—material omissions regarding safety were felt in Florida. Boston Scientific's presence in Florida was anything but "fortuitous"— it was purposeful and deliberate. Ms. Bayless' erosion and other associated injuries were foreseeable. An unreasonably dangerous product, sold in Florida, will harm Florida residents.

*Third*, Ms. Bayless is a resident of and domiciled in Florida. She has no relationship whatsoever with Massachusetts.

*Fourth*, the Parties' relationship is centered in Florida—where Defendant distributes and sells the device; where Plaintiff resides; where Boston Scientific marketed its mesh sling; and lastly, where the injury happened.

### ii. The Section 6 Factors Do Not Weigh in Massachusetts' Favor.

The applicable § 6 factors do not suggest that Massachusetts has a more significant relationship than Florida. The relevant policies of the forum—Florida for these purposes—weigh in favor of applying Florida punitive damages law. "Under Florida law, the purpose of punitive damages is . . . to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Owens—Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999); *see also W.R. Grace & Co.—Conn. v. Waters*, 638 So. 2d 502, 504 (Fla. 1994) ("Punishment and deterrence are the policies underlying punitive damages."); *St. Regis Paper Co. v. Watson*, 428 So. 2d 243, 247 (Fla. 1983) (same).

Furthermore, Florida has made a policy decision on how to impose punitive damages and has an interest in its citizens availing themselves of these provisions.  Florida courts should not feel constrained to obey laws of Massachusetts that would limit or restrict a Florida citizen's access to Florida courts or to remedies that the Florida courts would otherwise provide.  While Boston Scientific has its principal place of business in Massachusetts, it has a reasonable expectation of being subject to Florida law for punitive damages.  Defendant willingly availed itself of the Florida market and committed wrongs here.  To subvert Florida's interests to that of Massachusetts would negatively impact the Restatement's consideration of (1) the needs of an interstate system and (2) policies of the forum. Punitive damages provide Florida a mechanism to hold foreign defendants accountable for the safety of Florida residents. Boston Scientific's conclusions and the resulting negation of Florida's interests would have a chilling effect on consumer protection in Florida. Boston Scientific should now be subject to Florida law.

Massachusetts' relevant policies on punitive damages and its relative interest in applying those policies here do not weigh in favor of applying Massachusetts law.  *Eghnayem v. Boston Scientific Corp.*, 2014 WL 5460605, at *2 (S.D. W.Va. Oct. 27, 2014) is precisely on point.  As the Court is well aware, just like this case, *Eghnayem* was a transvaginal mesh product liability case involving Florida plaintiffs against Boston Scientific.  Boston Scientific raised the same argument that case as it asserts here.  The *Eghnayem* court held:

> Massachusetts has no legitimate interest in applying its prohibition on punitive damages to injuries occurring outside of Massachusetts. BSC contends that Massachusetts has an interest in protecting its citizens from excessive financial liability. BSC is a Delaware Corporation with its principle place of business in Massachusetts. . . . BSC points to no Massachusetts legal authority supporting its proposition that Massachusetts has an interest in protecting its citizens from excessive liability, let alone liability for wrongs occurring outside of Massachusetts. Likewise, I am unable to locate any Massachusetts cases articulating the state's interest in prohibiting punitive damages at common law . . .

> Even assuming Massachusetts' punitive damages prohibition is based on a policy
> of shielding its residents from excessive liability, Massachusetts has no legitimate
> interest in enforcing this policy outside of its borders.

Thus, the Court held: "Massachusetts has no interest, and certainly not a relatively stronger interest than Florida, in applying its punitive damages law here."

The same holding should apply in this case. Ms. Bayless brought suit under Florida state law. Statutory causes of action under Massachusetts law were not pled. Just like *Eghnayem*, Boston Scientific cites no authority supporting its proposition that Massachusetts has an interest in protecting citizens from excessive liability for wrongs occurring out-of-state.

### B. This Court Should Follow the Decisions of Other Courts That Denied Boston Scientific's Choice of Law Motion.

Various courts have denied Boston Scientific's request to apply Massachusetts law on punitive damages performing the same "significant relationship" analysis to be applied here. Judge Goodwin repeatedly denied Boston Scientific's motions after thoroughly analyzing the respective state law and the factors above. *See Eghnayem v. Boston Scientific Corp.*, No. 2:13-cv-07965, 2014 WL 5386731 (S.D. W.Va. Oct., 21, 2014) (denying BSC's motion, applying Florida law on punitive damages); *Sanchez v. Boston Scientific Corp.*, 38. F. Supp. 3d 727 (S.D. W.Va. Aug. 18, 2014) (denying same, applying California law on punitive damages); *Adams v. Boston Scientific Corp.*, No. 2:12-cv-932, 2015 WL 5882980 (S.D. W.Va. Oct. 7, 2015) (denying same, applying Texas law on punitive damages); *Hendricks v. Boston Scientific*, 51 F. Supp. 3d 638 (S.D. W.Va. Oct. 9, 2014) *Holizna v. Boston Scientific Corp.*, 2015 WL 2452483, at *3 (S.D. W.Va. May 21, 2015) (denying same, applying Georgia law on punitive damages).[2]

---

[2] In the cases where the MDL court applied New Jersey punitive damages law over the forum state, the plaintiffs did not contest defendant's choice-of-law motion. *See Lewis v. Ethicon, Inc.* (*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*), 2014 WL 186869, at *9–10 (S.D.W. Va. Jan. 15, 2014), and *Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 6674433, at *2 (S.D.W. Va. Nov. 24, 2014).

These holdings are not limited to prior MDL rulings.  Boston Scientific made the same motion in *Barba v. Carlson et al.*, 2014 WL 1678246 (Del. Super. Apr. 8, 2014), seeking to apply Massachusetts law where the plaintiff was implanted and sustained injury in Delaware.  The *Barba* court denied Boston Scientific's motion, holding:

> There is no Delaware authority supporting the proposition that in a product liability action, Delaware law applies to every issue except punitive damages.  Such a conclusion would require a finding that Delaware had the most significant relationship to everything, except the conduct underlying punitive damages.  It is difficult to posit a case in which the conduct supporting compensatory damages is not inextricably intertwined with actions giving rise to punitive damages.

*Id.* at *7.  "Further, prohibiting Plaintiffs from seeking punitive damages would be contrary to Delaware's public policy against limiting damages on the basis of the law of another jurisdiction." *Id.*  The same reasoning should hold true here.

Finally, Boston Scientific made the same motion in *Harris v. Boston Scientific Corp.*, No. N15C-06-216 PEL (Del. Super. Apr. 11, 2017), seeking to apply Massachusetts law where the plaintiff was implanted and sustained injury in Arkansas.  That motion was denied as well (order attached hereto as "**Exhibit G**").

### C. *Salinero* Meaningfully Differs from This Case and Is Not Controlling Precedent.

Boston Scientific relies heavily on *Salinero*, but *Salinero* is not particularly on point. There, the defendant sought to apply New Jersey law on punitive damages, which differs from Massachusetts law.  New Jersey law permits punitive damages, much like Florida, unless the manufacturer's drug or device "was subject to premarket approval or licensure by the [FDA] . . . and was approved . . . ."  N.J.S.A. 2A:58C-5(c).  Thus, courts have applied New Jersey law on punitive damages because the New Jersey legislature "made a deliberate decision to insulate New Jersey manufacturers from punitive damages after 'carefully balanc[ing] the need to protect

individuals against the need to protect an industry with a significant relationship to [the New Jersey] economy and public health.'" *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306, 1311 (N.D. Fla. 2013) (citations omitted).  Contrary to New Jersey law, there is no

> Massachusetts legal authority supporting its proposition that Massachusetts has an interest in protecting its citizens from excessive liability, let alone liability for wrongs occurring outside of Massachusetts.

*Eghnayem* 2014 WL 5386731, at * 5.  In fact, Massachusetts permits punitive damages for product liability claims so long as they are brought under Massachusetts General Laws chapter 93A § 9.  G.L. c. 93A, §9 expressly provides for punitive damages in actions where unfair or deceptive trade acts caused injury.  Massachusetts, therefore, has not demonstrated the certain immunity policy as New Jersey for purposes of § 6 of the Restatement (Second).

Other differences between this case and *Salinero* exist as well.  First, because the mesh in *Salinero* was cleared under the 510(k) process and was not approved by the FDA, the defendant was not immune from punitive damages and the plaintiff preserved her claim.  Applying New Jersey punitive damages law only affected the amount that the jury could have awarded because New Jersey imposes different caps than Florida.  *Compare* N.J.S.A. 2A:15-5.14 *with* Fla. Stat. § 768.73(1)(a)–(c).  Second, the issue was briefed differently in *Salinero* than here.  There, the plaintiff primarily argued that the court need not engage in a comprehensive choice-of-law analysis because she maintained a "true conflict" between Florida and New Jersey did not exist.  Thus, contrary to this case, that plaintiff did not point out the Florida-based wrongful conduct or policies of the states regarding punitive damages that would support applying Florida law.  *See* Salinero Pl. Resp. at 14–19 (attached hereto as "**Exhibit H**").

For all these reasons, Boston Scientific's motion on Plaintiff's punitive damages claim should be denied.

**CONCLUSION**

Based on the foregoing, the Court should deny Boston Scientific's Motion for the Summary

Judgment and grant such other and further relief as the Court deems just and proper.

DATED: October 29, 2020                        Respectfully submitted,

                                               */s/ Jeffrey L. Haberman*
                                               Jeffrey L. Haberman, Esq.
                                               **SCHLESINGER LAW OFFICES, P.A.**
                                               1212 SE Third Avenue
                                               Fort Lauderdale, FL 33316
                                               Telephone: (954) 320-9507
                                               jhaberman@schlesingerlaw.com
                                               *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 29, 2020, I served a copy of the foregoing on the Clerk of

Court by CM/ECF, which will provide automatic notification to all parties and counsel of record.

                                   By: */s/ Jeffrey L. Haberman*
                                       Jeffrey L. Haberman