UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| RAEANN BAYLESS, *Plaintiff*, v. BOSTON SCIENTIFIC CORPORATION; and COLOPLAST CORP., *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 6:20-cv-831-Orl-37GJK Hon Roy B. Dalton, Jr. |

### DEFENDANT BOSTON SCIENTIFIC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Boston Scientific moved for summary judgment (on all remaining claims[1] regarding itself and its Advantage Fit product) on three grounds: (1) Plaintiff cannot establish specific causation under *any* theory of liability, based on her own expert's admissions; (2) she cannot establish failure to warn, since her learned-intermediary doctor was both warned and aware of the potential injuries; and (3) punitive damages are unavailable under controlling Massachusetts law. These grounds entitle Boston Scientific to final summary judgment. Indeed, the first ground alone is dispositive of all claims against Boston Scientific.

**I.    Plaintiff's Own Expert Establishes the Absence of Specific Causation.**

Boston Scientific is entitled to summary judgment on all of Plaintiff's claims because she cannot meet her specific-causation burden (to establish that Boston Scientific's product caused her individual injuries).[2] To meet her burden, Plaintiff must offer expert testimony

---

[1] Plaintiff does not dispute she dropped her claims for negligence and strict liability as to manufacturing defect (Counts I, III) and discovery rule/tolling/fraudulent concealment (Count VII).

[2] *Guinn v. AstraZeneca Pharm. LP,* 598 F. Supp. 2d 1239, 1242 (M.D. Fla. 2009) (Conway, J.) ("*Guinn I*"), *aff'd*, 602 F.3d 1245 (11th Cir. 2010) ("*Guinn II*") (plaintiff's burden to

1

(since complex medical questions are at issue),[3] opining "to a reasonable degree of medical certainty,"[4] that Boston Scientific's product more likely than not "was a *substantial factor*" in causing her alleged injuries.[5] Instead, Plaintiff's expert said the opposite.

In his deposition, Plaintiff's own designated expert, Dr. Rosenzweig, *refuted* specific causation of injury by Boston Scientific's Advantage Fit. The following points are undisputed:

- Dr. Rosenzweig testified that the alleged injuries identified in his case-specific report ("mesh erosions/exposures, vaginal bleeding and infection") were more likely than not caused *only* by Restorelle Y-mesh, *not* by Boston Scientific's Advantage Fit sling, and that nothing in Plaintiff's medical records linked these alleged injuries to the Advantage Fit sling. Doc. 110-4 at 207:12–209:22, 213:7–15, 207:24–208:1, 213:10–15, 221:8–9, 294:23, 295:7–8.

- Another injury, dyspareunia, was neither identified in Plaintiff's Fact Sheet (Doc. 110-11) nor mentioned in Dr. Rosenzweig's report (Doc. 110-3). Since his report disclosed no opinions about dyspareunia, Dr. Rosenzweig cannot properly opine about this issue.[6]

- Even if Dr. Rosenzweig could properly opine about dyspareunia and its specific cause, he testified that the Advantage Fit sling was at most only a "secondary" or "minimal

---

establish specific causation).

[3] *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1343 (S.D. Fla. 2019).

[4] *Small v. Amgen, Inc.,* No. CV 2:12-476-PAM-MRM, 2017 WL 5444003, at *3 (M.D. Fla. Mar. 22, 2017) (Magnuson, J.), *aff'd,* 723 F. App'x 722 (11th Cir. 2018).

[5] *McCasland v. Pro Guard Coatings, Inc.*, No. 8:17-CV-990-T-27AEP, 2018 WL 5786164, at *2 (M.D. Fla. Nov. 5, 2018) (Whittemore, J.), *aff'd*, 799 F. App'x 731 (11th Cir. 2020). (emphasis in original) (citing *Guinn I,* 598 F. Supp. 2d at 1242); *Guinn II*, 602 F.3d at 1256 (citing *Gooding v. Univ. Hosp. Bldg.*, 445 So. 2d 1015, 2018 (Fla. 1984)).

[6] *See* Fed. R. Civ. P. 26(a)(2)(B) (expert reports must include "a complete statement of all opinions the witness will express and the basis and reasons for them"); Fed. R. Civ. P. 26(a)(2)(D) and 26(e)(2) (requiring supplementation of expert reports); *Romero v. Drummond Co.,* 552 F.3d 1303, 1323 (11th Cir. 2008) (expert may not offer new opinions in deposition).

contributor," rather than a "substantial factor," in causing dyspareunia. Doc. 110-4 at 211:1–8, 222:9-11, 287:4–9, 290:9–291:3. Indeed, he conceded that "no specific medical record or testimony … links the dyspareunia to the Advantage Fit." *Id.* at 295:7–8.

Plaintiff's response brief disputes none of these things. Instead, she *repeats* Dr. Rosenzweig's testimony that the Advantage Fit was only a "secondary" contributor. Doc. 125 at 3-4. But a specific cause must be more than a "secondary" or "minimal" contributor. *See McCasland*, 2018 WL 5786164, at *2 (requiring "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a *substantial factor* in bringing about the result") (emphasis in original). A defendant is entitled to summary judgment if (as here) there is no evidence that its product was "more likely than not a substantial contributing factor" in causing the plaintiff's injury. *Guinn II,* 602 F.3d at 1257.

Plaintiff's inability to show specific causation is fatal to *all* her claims. The Court may enter summary judgment without even reaching the additional grounds discussed below.

## II.   Under the Learned Intermediary Doctrine, Plaintiff Cannot Establish Failure to Warn.

### A.   The learned intermediary doctrine is not an affirmative defense.

Florida law is clear that (1) manufacturers of prescription medical devices (such as the Advantage Fit) owe a duty to warn about risks only to "learned intermediary" prescribing physicians, and not directly to patients, and (2) no actionable failure to warn exists either if the manufacturer warned the learned intermediary of the risks at issue, or if the learned intermediary was independently aware of them. *Christopher v. Cutter Labs.,* 53 F.3d 1184, 1192 (11th Cir. 1995). Here, for every complication Plaintiff claims, Boston Scientific's Directions for Use ("DFU") accompanying the Advantage Fit disclosed the risk to Plaintiff's doctor, who

3

testified that she was independently aware of all these risks.

Plaintiff asserts that the learned intermediary doctrine is an "affirmative defense" (citing *MacMorris v. Wyeth, Inc.*, No. 2:04CV596FTM-29DNF, 2005 WL 1528626, *3 (M.D. Fla. June 27, 2005)) and imposes on Boston Scientific a "heightened summary judgment burden." Doc. 125 at 4-5. This assertion has been repeatedly rejected in the MDL proceedings. *See, e.g., Oliver v. Bos. Sci. Corp.,* No. 2:13-CV-01736, 2015 WL 5838506, at *5 n.2 (S.D.W. Va. Oct. 5, 2015) (granting summary judgment on failure to warn):[7]

> The plaintiff argues that the learned intermediary doctrine is an affirmative defense. … Thus, according to the plaintiff, BSC bears the burden of proof on this issue. … Although a few Florida courts have indeed referred to the learned intermediary as an affirmative defense, upon review, I distinguish those cases and reject such a characterization. *See Walls v. Armour Pharmaceutical Co*., 832 F. Supp. 1467, 1482 (M.D. Fla. 1993) (holding that the defendant bore the burden of proof with regard to the learned intermediary doctrine when moving for judgment as a matter of law under Federal Rule of Civil Procedure 50), *aff'd in part, rev'd in part on other grounds sub nom. Christopher v. Cutter Labs*., 53 F.3d 1184 (11th Cir. 1995); *MacMorris v. Wyeth, Inc.*, No. 2:04CV596FTM-29DNF, 2005 WL 1528626, at *2 (M.D. Fla. June 27, 2005) (declining to resolve the issue of whether the learned intermediary doctrine applies at the motion to dismiss stage); *Horillo v. Cook, Inc.,* No. 10-15327, 2012 WL 6553611, at *3 (11th Cir. Nov. 7, 2012) (referring to the learned intermediary doctrine as an affirmative defense in the context of a defendant's ability to "avoid liability by demonstrating the treating physician was otherwise aware of the particular risk associated with the medical device").

*See e.g. Wolford v. Bos. Sci. Corp*., No. 2:12-CV-00835, 2015 WL 5838504, at *4 n.1 (S.D.W. Va. Oct. 5, 2015) (same).

This District has agreed with the MDL Court. *See Tillman v. C.R. Bard, Inc.,* 96 F. Supp. 3d 1307, 1352 (M.D. Fla. 2015) (Howard, J.) ("the Court concurs that the assertions

---

[7] Plaintiff's assertion that failure to warn is unsuitable for summary judgment (Doc. 125 at 13-14) is just incorrect.

4

[about the learned intermediary doctrine] are not affirmative defenses"); *id.* at 1338 (granting summary judgment to defendant on claim of failure to warn regarding prescription medical device). Indeed, *Pringle v. Johnson & Johnson*, No. 13-81022-CIV, 2020 WL 4501834, at *3-4 (S.D. Fla. Jan. 30, 2020) (Marra, J.) examined in detail and rejected the assertion that the learned intermediary doctrine is an affirmative defense, and granted summary judgment on a failure-to-warn claim about a mesh sling medical device — just like the claim here.

The same analysis applies here. In its DFU accompanying the Advantage Fit, Boston Scientific warned of the risk of all the complications Plaintiff alleges she experienced, and her surgeon, Dr. Jones, was aware of the risks. *See* Doc. 110 at 2-3, 14-15. As in *Tillman* and *Pringle,* this Court should grant summary judgment. *See also Small v. Amgen, Inc.,* 134 F. Supp. 3d 1358, 1371 (M.D. Fla. 2015) (Steele, J.) (granting summary judgment on failure-to-warn claims as barred by learned intermediary doctrine when physician was aware of risks), *aff'd*, 723 F. App'x 722 (11th Cir. 2018); *Salinero v. Johnson & Johnson,* 400 F. Supp. 3d 1334, 1351-52 (S.D. Fla. 2019) (Ungaro, J.) (same); *Silverstein v. Boehringer Ingelheim Pharm., Inc.,* No. 19-CIV-81188, 2020 WL 6110909, at *13, 39-41 (S.D. Fla. Oct. 7, 2020) (Reinhart, M.J.) (recommending entry of summary judgment for defendant on failure to warn).

B.     **Plaintiff's doctor was warned and was aware of the risks.**

Boston Scientific's DFU disclosed the risk of every complication Plaintiff complains of, and Dr. Jones had independent knowledge of all these risks. Yet Plaintiff argues that the warnings were inadequate unless they essentially said, "do not use this product for any medical purpose." Doc. 125 at 6-12. That assertion is wrong for four reasons.

*First*, that is not the law. Florida law requires manufacturers of prescription medical

5

devices to disclose the risks, not to advise against use. *Cf. Carlson v. Bos. Sci. Corp.,* 2015 WL 1931311, at *26 (S.D.W. Va. Apr. 28, 2015) (excluding proposed opinion by urogynecologist that Boston Scientific breached a duty to inform plaintiff's doctor that its mesh product should not be used for medical purpose).

*Second*, Plaintiff's assertion that Boston Scientific should have advised doctors "do not use this product," based on a "Caution" that the supplier of polypropylene resin (the raw material from which mesh slings are made) added to its Material Safety Data Sheet ("MSDS") is a red herring. Even if the Caution had any weight, "the inquiry is not whether the manufacturer warned of *defects*, the question is whether the manufacturer warned of *risks*." *Dye v. Covidien LP*, No. 18-CIV-61485-RAR, 2020 WL 3408632, *8 (S.D. Fla. June 16, 2020) (emphasis in original) (citing *Pierre v. Intuitive Surgical, Inc.*, No. 18-60095, 2020 WL 1240420, at *12 (S.D. Fla. Mar. 6, 2020) ("[Defendant] need only reasonably warn physicians of the *injury alleged* from failure to use the product in the prescribed manner, not the specific way(s) the alleged injury may occur.") (emphasis added)). It is undisputed that Boston Scientific's DFU warned physicians of the risk of each injury Plaintiff claims. Doc. 110 at 3; Doc. 110-2 at 4. It is further undisputed that Dr. Jones knew of the risk of all the injuries Plaintiff claims, as reflected in her testimony (Doc. 110-5 at 126-28) as well as in the very detailed warnings contained in her own consent forms that she provided to Plaintiff (Doc. 110-8). As *Dye* and *Pierre* explain, Boston Scientific had no duty to identify in its DFU the reasons why these complications might occur.

*Third*, the MSDS Caution is not even admissible evidence (as required by Fed. R. Civ. P. 56(c)(4) to oppose summary judgment). This out-of-court statement is hearsay, with no

6

asserted hearsay exception, if it is used to suggest (as Plaintiff does in her summary judgment response) that polypropylene is unsafe for medical use. *See* Fed. R. Evid, 802, 803; *In re C.R. Bard, Inc.*, 810 F.3d at 924, 925 (holding MSDS Caution not admissible for its truth). Courts have rejected the argument that the MSDS and Caution fall within the hearsay exception of Rule 803(17) (which applies to "market quotations, lists, directories, or other compilations"). *See id.* at 924 ("The warning … that polypropylene should not be used in human implants was an opinion the company issued within the MSDS for self-interested reasons, and it therefore bears no resemblance to the factual, list-type documents enumerated in Rule 803(17).").

*Fourth*, it is circular to argue, as Plaintiff does, that Dr. Jones would not have used the Advantage Fit if she had been advised it was unfit for medical use. Plaintiff has shown no basis for Boston Scientific to so advise doctors — essentially, to withdraw its medical product from medical use, despite the FDA's clearance. There is no question that Dr. Jones was both advised and aware of the risks that Plaintiff claims she experienced.

### III. Punitive Damages Are Unavailable Under Controlling Massachusetts Law.

Plaintiff discusses at length the applicability of Florida's substantive tort law, Florida's embrace of the Second Restatement's "significant relationship" test for choice of law, and Florida's interest in the factors listed in the Second Restatement's "general principles" and "personal injuries" sections. Doc. 125 at 14-18. But the issue at hand is punitive damages. Plaintiff completely omits any mention of the Second Restatement's specific discussion of punitive damages:

> [W]hen the place of injury … bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law. For example,

7

> … when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance ….

Restatement (Second) of Conflict of Laws § 145, cmt. e (1971). The alleged misconduct for which Plaintiff seeks punitive damages is Boston Scientific's conduct in making decisions concerning the design, labeling, marketing, and distribution of its Advantage Fit product — conduct that without dispute occurred in Massachusetts.

Plaintiff also omits any discussion of the numerous Florida federal cases (cited in Boston Scientific's motion) that, applying the Second Restatement, chose the law of the defendant's home as the law governing punitive damages. *See* Doc. 110 at 19-22. For example, in *Kirchman v. Novartis Pharm. Corp.*, No. 8:06-CV-1787-T-24, 2014 WL 2722483 (M.D. Fla. June 16, 2014) (Bucklew, J.), this District explained:

> [The New Jersey based defendant] argues that New Jersey has a more significant relationship to the punitive damages issue, because the place where the injury-causing conduct occurred is particularly significant when the purpose of the tort rule is to punish and deter. …
>
> … Although the place of injury is generally the most important contact, other contacts may be more important to certain issues. …
>
> Specifically, the place where the conduct occurred will assume greater importance than the place of injury in certain situations [such as] "when the primary purpose of the tort rule involved is to deter or punish misconduct." Restatement (Second) of Conflict of Laws § 145(2) cmt. e (1971) (citing § 145(1) cmt. c)) …. Here, the purpose of punitive damages is to deter and punish misconduct. … The Court therefore agrees with the reasoning of the courts finding that—with respect to punitive damages—the place of the injury-causing conduct, New Jersey, is more important than the place of injury. …
>
> The Court also agrees with the courts that have found that the section 6 principles support applying New Jersey law to punitive damages. … Accordingly, the Court finds that New Jersey has the most significant relationship, and therefore New Jersey law should be applied, to the issue of punitive damages in this case.

*Id.* at *4–5 (citations omitted). *See also, inter alia, Dopson-Troutt v. Novartis Pharms. Corp.*,

8

No. 8:06-CV-1708-T-24-EAJ, 2013 WL 3808205 at *4 (M.D. Fla. July 22, 2013) (Bucklew, J.) (same); *Guenther v. Novartis Pharm. Corp.*, No. 6:08-CV-456-ORL-31, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013) (Presnell, J.) (same); *Chiles v. Novartis Pharm. Corp.*, 923 F. Supp. 2d 1330, 1333 (M.D. Fla. 2013) (Adams, J.) (same).

The only distinction Plaintiff draws between these decisions (together with the similar decision in *Salinero v. Johnson & Johnson,* 400 F. Supp. 3d 1334, 1351-52 (S.D. Fla. 2019) (Ungaro, J.)) and the present case is that they involved New Jersey rather than Massachusetts defendants. Doc. 125 at 19-20. Plaintiff asserts that Massachusetts's law on punitive damages is not as protective of its residents as New Jersey's. That assertion is both untrue[8] and irrelevant. The question is the defendant's home state's interest in applying its law to the conduct of its residents, not the specific content of its law.

In any event, Plaintiff does not dispute that Massachusetts law would not allow the imposition of punitive damages in this case. Under Restatement § 145, cmt. e and the cases cited above, Plaintiff's punitive claim is governed by Massachusetts law, under which the claim is invalid.

## CONCLUSION

The Court should therefore enter summary judgment in Boston Scientific's favor on each of the remaining claims in Plaintiff's Short Form Complaint

Dated: November 12, 2020        **/s/ *Traci T. McKee***

---

[8] *See Int'l Fid. Ins. Co. v. Wilson,* 443 N.E.2d 1308, 1317 n.20 (Mass. 1983) (Massachusetts protects its citizens, including its manufacturers, from punitive damages under common law); *Freeman v. World Airways, Inc.*, 596 F. Supp. 841, 846 (D. Mass. 1984) (law is designed to protect Massachusetts's citizens "from excessive liability and thus to encourage businesses to locate and conduct economic affairs in the jurisdiction").

        Traci T. McKee, Esq., Attorney No. 53088
FAEGRE DRINKER BIDDLE & REATH LLP
1050 K Street NW, Suite 400
Washington, DC 20001
Telephone: (202) 312-7028
traci.mckee@faegredrinker.com
*Admitted only in Florida; supervision by principals of the firm admitted to the D.C. bar*

***Attorneys for Defendant***
***Boston Scientific Corporation***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2020 I filed the foregoing in the CM/ECF system, which will serve electronic copies upon all counsel of record.

        **/s/ *Traci T. McKee***
Traci T. McKee, Esq., Attorney No. 53088