UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAEANN BAYLESS,

    Plaintiff,

v.                                                           Case No. 6:20-cv-831-Orl-37GJK

BOSTON SCIENTIFIC
CORPORATION; and COLOPLAST
CORP.,

    Defendants.
_____

**ORDER**

Before the Court is Defendant Boston Scientific Corporation's ("**BSC**") Motion for Summary Judgement (Doc. 110 ("**BSC's MSJ**")), BSC's *Daubert* motion on Dr. Rosenzweig's case-specific opinions (Doc. 111 ("**BSC's Daubert**")), and Defendant Coloplast Corp.'s ("**Coloplast**") Motion for Summary Judgment (Doc. 114 ("**Coloplast MSJ**")). Briefing was completed and the Court held a hearing on the motions. (Docs. 123, 125, 126, 131, 132, 162.) On review, the Court denies all motions.

        **I.**     **BACKGROUND**

This case is one of thousands of related cases remanded from MDL 2326 involving alleged issues with BSC's transvaginal mesh product.[1] (*See* Doc. 4.)

Plaintiff Raeann Bayless ("**Bayless**") suffered from multiple pelvic conditions,

---

[1] *See Humleker v. Bos. Sci. Corp.*, No. 6:19-cv-121-Orl-31EJK, 2020 WL 6870852, at *1 (M.D. Fla. Oct. 2, 2020).

including two types of pelvic organ prolapse ("**POP**") (a uterine prolapse and a cystocele or a bladder prolapse) and stress urinary incontinence ("**SUI**"). (Doc. 110-3, pp. 4–5, 7–8; Doc. 110-4, p. 76:17–24.) After consulting with her physician, Dr. Kathy Jones, Bayless decided to undergo surgery—she had a hysterectomy and two medical mesh devices, BSC's Advantage Fit Transvaginal Mid-Urethral Sling System ("**Advantage Fit**") and Coloplast's Restorelle Y, implanted to treat her POP and SUI. (Doc. 113-10, pp. 45:13–16, 81:9–11.) The meshes were implanted at two different locations: the Restorelle Y was implanted transabdominally and used to suspend the vagina within the abdomen, restoring the vagina to its normal position; the Advantage Fit was implanted transvaginally, being placed under her urethra to support it and address her SUI. (*See* Doc. 110-5, pp. 82:2–5, 105:6–111:23; Docs. 110-9, 110-10.) After the surgery, Bayless suffered from mesh erosions and exposure, vaginal bleeding, and infections. (*See* Doc. 110-3, p. 10.)

So Bayless sued both BSC and Coloplast alleging negligence, design defect, and failure to warn.[2] (*See* Doc. 1.) This case was remanded from MDL 2326 on May 11, 2020. (*See* Docs. 59, 88.) After remand, the parties were given the opportunity to supplement their briefing and file an additional case-specific *Daubert* and motion for summary judgment. (*See* Docs. 97–98.) The Court then held a hearing on December 1, 2020. (*See*

---

[2] Bayless has represented to both the Court and Defendants that she does not intend to proceed on the breach of warranty or manufacturing defect claims or on the claims in Count VII (discovery rule, tolling, fraudulent concealment). (Doc. 133, p. 11:3–6; Doc. 110, p. 1 n.1.)

Doc. 162.)

## II.   LEGAL STANDARDS

### A.   *Daubert* Standard

When it comes to expert testimony, a district court is tasked with a gatekeeping role. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). Expert testimony may only be admitted into evidence if: (1) "the expert is qualified to testify"; (2) "the methodology by which the expert reaches his conclusions is sufficiently reliable"; and (3) "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998); *see also* Fed. R. Evid. 702.

The proponent of the expert opinion must establish admissibility. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). But the proponent need not prove that the opinion is scientifically correct, just that it is reliable and helpful. *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002) (citation omitted). The court's limited gatekeeping role "is not intended to supplant" presentation of contrary evidence or cross-examination. *See United States v. Ala. Power Co.*, 730 F.3d 1278, 1282–85 (11th Cir. 2013) (quotation marks and citation omitted).

### B.   **Summary Judgment Standard**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A factual

dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's *version*," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). But the "court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citation omitted).

## III.  ANALYSIS

The Court first addresses BSC's case specific *Daubert* against Dr. Rosenzweig before turning to the motions for summary judgment.

### A.  BSC's Case-Specific *Daubert*

BSC moves to exclude the case-specific testimony of Dr. Rosenzweig as unreliable and unhelpful. (Doc. 111.) BSC argues his case specific report was impermissibly prepared based solely on Plaintiff's medical records, without the benefit of deposition testimony from Plaintiff or her implanting surgeon. (*Id.* at 9–10.) And, BSC claims, the unreliability of this report is demonstrated when Dr. Rosenzweig appeared to contradict or modify many of his prior findings in his subsequent deposition based on information

he gleaned from later reviewing this testimony. (*See id.*)

Plaintiff responds that related MDLs have routinely found Dr. Rosenzweig's case specific opinions—developed using the same methodology applied here—reliable and admissible. (*See* Doc. 126.[3]) As to his later deposition testimony, Plaintiff points out that while Dr. Rosenzweig indicated the Restorelle Y may have contributed more to Plaintiff's injuries, Dr. Rosenzweig never outright recanted his prior expert report, instead repeating his prior opinion that Plaintiff's injuries were caused by both the Restorelle Y and the Advantage Fit. (*Id.* at 4–5 (citing Doc. 125-3, pp. 210:11–211:8).) Plaintiff has the better argument.

Dr. Rosenzweig was not required to personally examine or speak with Plaintiff for opinions based on her medical records to be admissible, provided he otherwise met the *Daubert* requirements. *See Armstead Armstead v. Coloplast Corp.*, No. 1:19-CV-1000, 2020 WL 353576, at *3–4 (M.D.N.C. Jan. 21, 2020); *see also Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216–18 (S.D. Fla. 2016). BSC points to no other flaws in the expert report or methodology itself, instead relying on comparisons between the report and Dr. Rosenzweig's later deposition testimony. (*See* Doc. 111.) But inconsistencies between the report and his testimony properly goes to the weight a jury should give the evidence, not

---

[3] *See also Mathison v. Bos. Sci. Corp.*, No. 2:13-cv-05851, 2015 WL 2124991, at *20 (S.D.W. Va. May 6, 2015); *Carlson v. Bos. Sci. Corp.*, No. 2:13-cv-05475, 2015 WL 1931311, at *21–22 (S.D.W. Va. Apr. 28, 2015); *Priddy v. C.R. Bard, Inc.*, No. 2:13-cv-10318, 2018 WL 662500, at *2 (S.D.W. Va. Feb. 1, 2018); *Chrastecky v. C.R. Bard, Inc.*, No. A-19-CV-1240-LY-SH, 2020 WL 748182, at *5–6 (W.D. Tex. Feb. 14, 2020); *Armstead v. Coloplast Corp.*, No. 1:19-CV-1000, 2020 WL 353576, at *3–4 (M.D.N.C. Jan. 21, 2020).

its admissibility. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Moore v. Wright Med. Tech., Inc.*, No. 1:14-cv-62, 2016 WL 1316716, at *5 (S.D. Ga. Mar. 31, 2016).[4] While his later testimony may cast doubt on his earlier opinions, this is a question for the jury—not the Court. *See Daubert*, 509 U.S. at 596. BSC's *Daubert* Motion is denied.

### B.     BSC's MSJ

Now that the Court has determined Dr. Rosenzweig's case-specific expert report and the opinions contained therein are admissible, much of BSC's causation argument fails. BSC argues it's entitled to summary judgment on Plaintiff's claims because Dr. Rosenzweig cannot establish there is a material dispute with regard to specific causation. (Doc. 110, pp. 9–12.) Not so.

Under Florida law, a plaintiff must "present evidence that the defendant's conduct was, more likely than not, a 'substantial factor' in causing the injury." *Whitney v. R.J. Reynolds Tobacco Co.*, 157 So. 3d 309, 312 (Fla. 1st DCA 2014); *see also* Florida Standard Jury Instruction 401.12(b). But "a defendant's conduct need not be the only cause of a plaintiff's injuries, or even fifty-one percent of the cause" and a plaintiff "is not required to prove that the defendant's conduct alone was more likely than not the sole proximate cause." *Whitney*, 157 So. 3d at 312. In his expert report, Dr. Rosenzweig opined to a

---

[4] *Advanced Fiber Tech. Tr. v. J & L Fiber Servs., Inc.*, No. 1:07-CV-1191 (LEK/DRH), 2010 WL 1930569, at *6 (N.D.N.Y. May 11, 2010).

reasonable degree of medical and scientific certainty the Advantage Fit and the Restorelle Y-mesh *both* caused Plaintiff's injuries. (Doc. 125-4, pp. 10–11.) He reiterated this opinion, albeit to a lesser extent, in his deposition. (Doc. 125-5, pp. 210:10–211:8.) While at various points in his deposition he indicates he believes that the Restorelle Y—and not the Advantage Fit—is responsible for Plaintiff's injuries, inconsistent statements are properly addressed on vigorous cross-examination, not used to exclude testimony or invalidate evidence on a motion for summary judgment. *See Rivera v. LeBron*, 824 F. App'x 838, 842 (11th Cir. 2020); *see also supra* Section III.A. As Plaintiff has produced enough evidence, at this stage, that a reasonable jury could conclude the Advantage Fit was more likely than not a substantial factor in causing her injuries, BSC's MSJ on causation is denied.[5]

Next, BSC argues Plaintiff's failure to warn claim fails as a matter of law. (Doc. 110, pp. 13–17.) For this claim to survive, Plaintiff must show: "(1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017). BSC argues the warnings were adequate and there is no evidence of proximate cause. (Doc. 110, pp. 13–17.) This argument is unconvincing.

Under the learned intermediary doctrine, BSC's duty to warn runs through the physician, not directly to Plaintiff. *See Christopher v. Cutter Lab.*, 53 F.3d 1184, 1192 (11th Cir. 1995). So the question is whether the label adequately warns physicians of the

---

[5] This finding does not preclude BSC from raising similar concerns on a motion for judgment as a matter of law after Plaintiff's presentation of her case (including Dr. Rosenzweig's testimony) at trial. *See* Fed. R. Civ. P. 50.

possibility that the product could cause the type of condition experienced by Plaintiff. *See Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990). Typically, the adequacy of warnings is a question of fact but in certain circumstances—when the warning is "accurate, clear, and unambiguous"—this can become a question of law. *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989).

Here, the warnings mention many of the symptoms Plaintiff complains of, but merely listing potential complications without categorical prohibitions is insufficient to absolve BSC as a matter of law. (*See* Doc. 110-2, p. 8; Doc. 125, p. 11); *see also Amore v. G.D. Searle & Co.*, 748 F. Supp. 3d 845, 851 (S.D. Fla. 1990); *cf. Felix*, 540 So. 2d at 105 (warning clearly stated the product *should not* be prescribed to pregnant patients because of observed fetal mutations in animal studies).[6] The Instructions for Use didn't explain the frequency, severity, or duration of these risks, or warn of the difficulty of removal of the devices (leading to potentially chronic symptoms) or that the device was made of polypropylene, a material (according to Plaintiff) not designed or suitable for permanent human implantation that could degrade in vivo. (*See* Doc. 110-2); *Humleker v. Bos. Sci. Corp.*, No. 6:19-cv-121-Orl-31EJK, 2020 WL 6870852, at *13–15 (M.D. Fla. Oct. 2, 2020); *see also Eghnayem*, 873 F.3d at 1322–23. BSC hasn't shown it is "inconceivable that reasonable persons could disagree as to the adequacy of the warnings"—so summary judgment is inappropriate here. *See Felix*, 540 So. 2d at 105 (quotation marks and citation omitted); *cf. Humleker*, 2020 WL 6870852, at *13–15; *Amore*, 748 F. Supp. 3d at 851.

---

[6] *See also Eghnayem*, 873 F.3d at 1322–23.

BSC next argues that even if the warnings were inadequate, Plaintiff has failed to show this failure proximately caused her injuries. (Doc. 110, pp. 15–18.) Under Florida law, Plaintiff must prove her physician would have acted differently if adequately warned. *See Eghnayem*, 873 F.3d at 1321. BSC points out Dr. Jones was independently aware of many risks associated with the Advantage Fit prior to recommending the procedure, including the injuries Plaintiff is alleging. (Doc. 110, p. 16; *see also* Doc. 110-5, pp. 19:24–20:6, 21:1–8, 127:8–128:8–17.) But Dr. Jones also testified she would "certainly" want to be informed if the polypropylene used to make the mesh was not suited for permanent human implantation and she "likely would not use that product" if so warned. (Doc. 125-3, pp. 43:10–45:6.) This is enough to satisfy the proximate causation element. *See Humleker*, 2020 WL 6870852, at *16–17. Summary judgment on Plaintiff's failure to warn claims against BSC is denied. *See id.*[7]

Finally, punitive damages and choice of law. Both parties agree the law that applies governs the availability of punitive damages against BSC: should Massachusetts (BSC's home state) law apply, punitive damages are unavailable; should Florida law apply, the claim goes to the jury. (*See* Doc. 110, pp. 18–25; Doc. 125, pp. 14–20.) The Court

---

[7] *See also Tyree v. Bos. Sci. Corp.*, No. 2:12-cv-08633, 2014 WL 5359008, at *3–4 (S.D.W. Va. Oct. 20, 2014); *William v. Bos. Sci. Corp.*, No. 2:12-cv-02052, 2016 WL 1448860, at *5 (S.D.W. Va. Apr. 12, 2016); *Eghnayem v. Bos. Sci. Corp.*, No. 2:13-cv-07965, 2014 WL 5460605, at *5–6 (S.D.W. Va. Oct. 27, 2014); *Jimenez v. Bos. Sci. Corp.*, No. 2:13-cv-02864, 2016 WL 1448863, at *3–4 (S.D.W. Va. Apr. 12, 2016); *Nava v. Bos. Sci. Corp.*, No. 2:13-cv-14455, 2016 WL 1448869, at *3–4 (S.D.W. Va. Apr. 12, 2016); *Allen v. Bos. Sci. Corp.*, No. 2:13-cv-06738, 2015 WL 5838511, at *4–5 (S.D.W. Va. Oct. 5, 2015); *Wolford v. Bos. Sci. Corp.*, 2:12-cv-00835, 2015 WL 5838504, at *4–5 (S.D.W. Va. Oct. 5, 2015); *Waltman v. Bos. Sci. Corp.*, No. 2:12-cv-00691, 2016 WL 1436681, at *3 (S.D.W. Va. Apr. 11, 2016).

must determine which law applies because there are two sovereigns with an interest in this case (Massachusetts and Florida) and their laws conflict. *See Humleker*, 2020 WL 6870852, at *18–20; *see also Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1568–69 (11th Cir. 1990). In deciding which state has the most significant relationship, the Court considers: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile/residence of the parties; and (4) the place where the relationship between the parties is centered. *Salinero v. Johnson & Johnson*, 408 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019); *see also* Restatement (Second) of Conflict of Law § 143 (1971).

BSC argues Massachusetts law governs punitive damages under this test because BSC is headquartered there, the alleged conduct to be punished (BSC's decisions) occurred there, and citizens of Massachusetts reasonably expect Massachusetts law will govern their conduct. (Doc. 110, pp. 19–24.) Plaintiff responds Plaintiff was injured in Florida, BSC chose to sell its products nationally (including in Florida), the relationship between the parties is centered in Florida, and Florida has made a policy decision to impose punitive damages and protect its citizens. (Doc. 125, pp. 15–17.) Plaintiff has the better argument.

The injury occurred in Florida—a factor heavily favoring Florida in this analysis. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). While BSC made decisions in Massachusetts—it also sold its products in Florida, and Plaintiff was implanted in Florida, so this factor is mixed. The third factor—location of the parties— also splits along party lines. But the fourth factor favors Plaintiff: BSC distributed its

products in Florida, Plaintiff was implanted in Florida, and Plaintiff was injured in Florida. So, on balance, Florida has a more significant relationship to the claim and Florida law controls punitive damages. *See Humleker*, 2020 WL 6870852, at *18–20; *Eghnayem v. Bos. Sci. Corp.*, 2014 WL 5386731, at 3–5; *Estate of Miller v. Ford Motor Co.*, No. 2:01-cv-545-FtM-29DNF, 2004 WL 7330563, at *3 (M.D. Fla. July 22, 2004). BSC's MSJ on punitive damages is denied.

### C.   Coloplast's MSJ

Coloplast, like BSC, argues Plaintiff's claims fail because she cannot show causation. (Doc. 114, pp. 7–11.) But Coloplast focuses on general causation evidence, not the existence of two competing products. (*See id.*) Regardless, the result is the same: Plaintiff has provided sufficient causation evidence to withstand summary judgment.

"In Florida, 'a product is defectively designed if the plaintiff proves that the design of the product proximately caused the plaintiff's injuries and the defendant fails to prove that on balance, the benefits of the design outweigh the risk of danger inherent in the design.'" *Eghnayem*, 873 F.3d at 1319 (quoting *Force v. Ford Motor Co.*, 879 So.2d 103, 106 (Fla. 5th DCA 2004)); *see also Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 606 (11th Cir. 2008). Plaintiff offers the testimony of Dr. Jimmy Mays, a polymers expert, who opines the mesh product is defective because it is made from polypropylene. (Doc. 123-6, pp. 6–7.) And Dr. Rosenzweig opines the mesh products implanted in Plaintiff (the Restorelle Y and Advantage Fit) degraded in vivo and caused mesh erosions, vaginal

bleeding, and infection.[8] (Doc. 125-4, pp. 10, 14.) Put together, these two opinions raise a triable issue of material fact as to whether a defectively designed product proximately caused Plaintiff's injuries. No more is needed. *See Eghnayem*, 873 F.3d at 1319.

Coloplast argues Dr. Rosenzweig's testimony isn't sufficient because he isn't offered as a general causation expert—relying heavily on toxic tort cases. (Doc. 114, pp. 7–8.[9]) But these cases don't create a heightened burden on causation for medical device products liability. (*See id.*) Instead, they simply restate, in the toxic tort context, what is required for any product liability claim under Florida law: (1) a product defect that was (2) "more likely than not, a 'substantial factor' in causing the injury." *Whitney*, 157 So. 3d at 312; *Eghnayem*, 873 F.3d at 1319.[10] As the expert testimony of Drs. Mays and Rosenzweig together allow a reasonable jury to conclude the Restorelle Y's defective design caused Plaintiff's injuries, Coloplast's MSJ as to causation is denied.[11]

Next, punitive damages. Coloplast argues the evidence isn't sufficient to support punitive damages under Florida law.[12] (Doc. 114, pp. 24–26); *see also* Fla. Stat. § 768.72(2). For punitive damages to be available, Plaintiff must be able to show, by clear and

---

[8] Previously, the Court found Dr. Rosenzweig could not offer general causation opinions—e.g., the mesh is defective—but could offer case specific opinions on the injuries Plaintiff has suffered and their causes. (*See* Doc. 163, pp. 5–9.)

[9] *See also Guinn v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1239, 1241 (M.D. Fla. 2009); *Haller v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1271, 1275 (M.D. Fla. 2009); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005).

[10] *See also supra*, note 9.

[11] Coloplast also argues Dr. Rosenzweig's case-specific opinions should be excluded but the Court already ruled against this argument. (*See* Doc. 163, pp. 5–9.)

[12] Both Plaintiff and Coloplast agree Florida law should apply. (Doc. 114, pp. 24–26; Doc. 123, pp. 15–19.)

convincing evidence, Coloplast was guilty of "intentional misconduct"—e.g. it had "actual knowledge of the wrongfulness of the conduct and the high probability [of] injury" yet continued anyways—or "gross negligence"—e.g. its conduct "was so reckless or wanting in care it constituted a conscious disregard or indifference to the life, safety, or rights" of others. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220–21 (11th Cir. 2010) (quoting Fla. Stat. § 768.72(2)). This is a "fact intensive" inquiry "best conducted after the facts of the case are presented to a jury." *Melford v. Kahane & Assoc.*, 371 F. Supp. 3d 1116, 1129 (S.D. Fla. 2019) (cleaned up). Dr. Rosenzweig presents evidence Coloplast purposefully concealed the risks of the Restorelle Y despite knowing the risks before the launch of its product. (*See* Doc. 124-2, p. 12.) This is sufficient for a jury to infer gross negligence or intentional misconduct, so summary judgment isn't appropriate. *See id.*; *Melford*, 371 F. Supp. 3d at 1129. Coloplast's MSJ on punitive damages is denied.[13]

Finally, Coloplast's arguments as to failure to warn are nearly identical to BSC's arguments. (*See* Doc. 114, pp. 12–22; *cf.* Doc. 110, pp. 13–18.) As the Court explained, simply including Plaintiff's symptoms on a long list of possible adverse effects isn't enough to show the adequacy of the warning as a matter of law, and Dr. Jones' testimony raises a triable issue as to causation. *See supra* Section III.B. So Coloplast's MSJ on failure to warn is denied.[14]

---

[13] *See supra*, note 3.
[14] As to Plaintiff's claims on the discovery rule, tolling, and fraudulent concealment—the Court has dismissed these claims based on Plaintiff's representation, so Coloplast's MSJ on this point is moot. *See supra* note 2; (*see also* Doc. 123).

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Count VIII of Plaintiff's Complaint for Discovery Rule, Tolling and Fraudulent Concealment (Doc. 1, p. 5) is **DISMISSED.**

2. Defendant Boston Scientific's Motion to Exclude the Case-Specific Opinions and Testimony of Dr. Bruce Rosenzweig, M.D. (Doc. 111) is **DENIED.**

3. Defendant Boston Scientific's Dispositive Motion for Summary Judgment (Doc. 110) is **DENIED.**

4. Defendant Coloplast Corp.'s Motion for Summary Judgment (Doc. 114) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 23, 2020.



ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record