UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:20-cv-00831-RBD-GJK

RAEANN BAYLESS,

    Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION,
and COLOPLAST CORP.,

    Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT COLOPLAST'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff, Ms. Bayless, respectfully files this response in opposition to Defendant Coloplast Corp.'s renewed motion for judgment as a matter of law.

### Standard of Law

Judgment as a matter of law should only be granted if no objectively reasonable jury, based on the evidence and inferences adduced at trial and through the exercise of impartial judgment, could reach the verdict reached. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). Stated differently, the party moving for judgment as a matter of law must show that the trial evidence "is so overwhelmingly [in his favor] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d

1241, 1246 (11th Cir. 2001). However, where there is substantial evidence in the trial record which would allow reasonable minds to reach different conclusions, judgment as a matter of law is inappropriate. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010). In considering a motion for judgment as a matter of law, the district court must review the record and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Brown*, 597 F.3d at 1173. Importantly, the district court must not make credibility determinations or weigh evidence, as these are quintessential functions reserved for the jury. *Id.*

## Argument

I. **Plaintiff Provided Ample Testimony And Evidence on Design Defect and Causation**

In denying Coloplast's motion for summary judgment, the Court held: "In Florida, 'a product is defectively designed if the plaintiff proves that the design of the product proximately caused the plaintiff's injuries and the defendant fails to prove that on balance, the benefits of the design outweigh the risk of danger inherent in the design.'" *Eghnayem*, 873 F.3d at 1319 (quoting *Force v. Ford Motor Co.*, 879 So.2d 103, 106 (Fla. 5th DCA 2004)); *see also Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 606 (11th Cir. 2008). Plaintiff offers the testimony of Dr. Jimmy Mays, a polymers expert, who opines the mesh product is defective because it is made from polypropylene. (Doc. 123-6, pp. 6–7.) And Dr. Rosenzweig opines the mesh products implanted in Plaintiff (the Restorelle Y and Advantage Fit) degraded in vivo and caused mesh erosions, vaginal bleeding, and infection. (Doc. 125-4, pp. 10, 14.) Put

together, these two opinions raise a triable issue of material fact as to whether a defectively designed product proximately caused Plaintiff's injuries. No more is needed. *See Eghnayem*, 873 F.3d at 1319."

Dr. Mays testified as follows: "My opinion is polypropylene is *unsuitable for a permanent pelvic mesh implant* because it degrades inside the human body, and that changes its properties." Vol. 2a 33 4-7 (emphasis added).  And without any contemporaneous objection, Dr. Mays testified that that makes the Restorelle Y defective.  Dr. Mays explained that oxidative degradation causes the mesh to become brittle, hard, and lose flexibility.  Dr. Mays supported his opinions through medical literature that notes the body's intense inflammatory reaction to mesh material.  Vol. 2 100:11-102:14.  This testimony is precisely in line with the Court's ruling on *Daubert* and summary judgment.  Coloplast contends that Dr. Mays "did not provide any testimony that would allow the jury to assess the risks or the benefits to anyone implanted with the Restorelle Y."  Coloplast Mot. at 6.  But that is wrong.  Here, the jury could find that the Restorelle Y's change in properties as a result of oxidative degradation is a risk that is not outweighed by any of the product's "benefits."  The jury could find that permanent medical implant should not degrade in vivo and that such degradation is too risky.  What's more, Dr. Mays is not tasked with weighing the risks over the benefits.  The jury is so tasked.  Dr. Mays provided ample testimony that the jury could have relied on to assess the risks and benefits.

Coloplast's arguments pertaining to Dr. Rosenzweig fare no better.  Dr. Rosenzweig testified at length on the complications associated with polypropylene

mesh. Vol 8, 177:15-179:16. Dr. Rosenzweig also testified that the Restorelle Y mesh was causing pain and painful intercourse; that it was eroding and degrading; that it was a cause of repeated infections post-implant; that it was a cause of bleeding; that it was causing a chronic inflammation, a chronic foreign body reaction, fibrotic bridging, and scar plate formation; and that the mesh was contracting. Vol 9 67:25-69:6. Dr. Rosenzweig further stated that the Restorelle Y was no suitable for implantation in Ms. Bayless. Here too, the jury had ample testimony that demonstrated the risks of the Restorelle Y outweighed the benefits for Ms. Bayless. Coloplast maintains that these opinions are not about the Restorelle Y's design. Again, that is wrong. Ms. Bayless' injuries were caused by the properties of Restorelle Y's polypropylene mesh, as Dr. Rosenzweig testified.

    Coloplast's focus on Dr. Jones is inapposite. The jury was free to discount or ignore Dr. Jones' opinions (as well as Dr. Goldberg's and Dr. Cole's). First, the jury may have found Dr. Jones' testimony to be biased or inconsistent. Dr. Jones had long consulted with a mesh manufacturer and gave several presentations on mesh-related complications. It follows that a product whose "benefits outweigh its risks" is not associated with a "Mesh Mess," as Dr. Jones' called one of her presentation. Second, the jury was free to disagree with Dr. Jones. Dr. Jones testified that the Restorelle Y could cause erosions, which may lead to subsequent surgeries 5-10% of the time. The jury could have believed that rate to be too high. Indeed, Coloplast internal communications showed that Coloplast was concerned with erosion rates above even 1%.

Ample evidence and testimony supported Plaintiff's design defect claim. In addition to testimony above, the jury viewed internal communications regarding Coloplast's knowledge of mesh degradation, (PX 97); the Restorelle's propensity to shrink, (PX 52); and that the inherent properties of the Restorelle contribute to painful intercourse (PX 3). Grouped with the fact that Coloplast failed to conduct any clinical trials before marketing the Restorelle Y, the jury's verdict on design defect rests on firm grounds.

## II. Plaintiff Provided Sufficient Evidence on General Causation

Coloplast's argument on the perceived absence of general causation is not well-taken. Coloplast essentially resubmits the same flawed contentions the Court previously rejected. In denying Coloplast's motion on summary judgment, the Court held that Coloplast's reliance on toxic tort cases "don't create a heightened burden on causation for medical device products liability. Instead, they simply restate, in the toxic tort context, what is required for any product liability claim under Florida law: (1) a product defect that was (2) "more likely than not, a 'substantial factor' in causing the injury." As the expert testimony of Drs. Mays and Rosenzweig together allow a reasonable jury to conclude the Restorelle Y's defective design caused Plaintiff's injuries." Doc. 169 at 12 (citations omitted). The same reasoning is true here. The jury was presented with plenty of evidence by way of expert testimony, as detailed above, medical literature, and internal documents that showed that the Restorelle Y polypropylene mesh is capable of causing, and did cause, Ms. Bayless' injuries.

DATED:  August 31, 2021		Respectfully submitted,

                                                         */s/ Jeffrey L. Haberman*
                                                         Jeffrey L. Haberman
                                                         **SCHLESINGER LAW OFFICES, P.A.**
                                                         1212 SE Third Avenue,
                                                         Fort Lauderdale, FL 33316
                                                         Telephone: (954) 320-9507
                                                         jhaberman@schlesingerlaw.com
                                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2021, I served a copy of the foregoing on the Clerk of Court by CM/ECF, which will provide automatic notification to all parties and counsel of record.

                                                         By: */s/Jeffrey L. Haberman*
                                                                Jeffrey L. Haberman