UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAEANN BAYLESS,

    Plaintiff,

v.                                    Case No.: 6:20-cv-00831-RBD-GJK

BOSTON SCIENTIFIC CORP.
and COLOPLAST CORP.,

    Defendants.
_____/

**DEFENDANT COLOPLAST CORP.'S REPLY IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

## **TABLE OF CONTENTS**

I.  Plaintiff's Design Defect Claim Fails Because Plaintiff Did Not Present Competent Evidence That the Risks of Restorelle Y's Design To Any Patient Outweighed Its Benefits .................................................................... 1

II. Plaintiff's Design Defect Claim Also Fails for Lack of Competent Expert Testimony Establishing General Causation ...................................................... 6

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alexander v. Danek Med., Inc.*,
    37 F. Supp. 2d 1346 (M.D. Fla. 1999) .............................................................. 3

*Anderson v. Techtronic Indus. N. Am., Inc.*,
    2015 WL 7429060 (M.D. Fla. Nov. 23, 2015) ................................................. 6

*Cates v. Zeltiq Aesthetics, Inc.*,
    --- F. Supp. 3d ---, 2021 WL 1808583 (M.D. Fla. Apr. 19, 2021) .................... 5

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*,
    609 F.3d 1183 (11th Cir. 2010) ........................................................................ 6

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    510 F. Supp. 3d 1234 (S.D. Fla. 2020) ............................................................. 2

*Kilpatrick v. Breg, Inc.*,
    613 F.3d 1329 (11th Cir. 2010) ........................................................................ 6

**State Cases**

*Aubin v. Union Carbide Corp.*,
    177 So. 3d 489 (Fla. 2015) ............................................................................... 2

*Boyles v. A & G Concrete Pools, Inc.*,
    149 So. 3d 39 (Fla. 4th DCA 2014) .................................................................. 3

*Cavanaugh v. Stryker Corp.*,
    308 So. 3d 149 (Fla. 4th DCA 2020) ................................................................ 5

*Husky Indus. v. Black*,
    434 So. 2d 988 (Fla. 4th DCA 1983) ................................................................ 3

*Wald v. Grainger*,
    64 So. 3d 1201 (Fla. 2011) ........................................................................... 4, 5

I.  **Plaintiff's Design Defect Claim Fails Because Plaintiff Did Not Present Competent Evidence That the Risks of Restorelle Y's Design To Any Patient Outweighed Its Benefits**

Plaintiff's response (Doc. 362) confirms that she failed to present competent expert evidence that would allow the jury to reasonably conclude that the risks of Restorelle Y's design outweigh its benefits. As outlined in Coloplast's motion, the Court's pretrial rulings meant that Drs. Mays and Rosenzweig could not and did not offer any evidence about the relative risks and benefits of the Restorelle Y's design to any patient. Doc. 346 at 5–10. And the only witness to actually discuss this topic during Plaintiff's case, Dr. Kathy Jones, said the opposite of what Plaintiff had to prove. Plaintiff's brisk response brief now suggests that the jury could just ignore Dr. Jones's crystal-clear opinion because it could somehow infer from Drs. Mays and Rosenzweig that the risks to patients outweigh the benefits of the Restorelle Y's design. Doc. 362 at 3–4. But neither the record nor the law permits a verdict based on the pyramid of unreasonable, unsupported inferences that is outlined in Plaintiff's response.

1.  As to Dr. Mays, Plaintiff just points out that he believes *any* polypropylene product is unsuitable for human implantation because oxidative degradation may cause the mesh to become brittle, hard, and stiff. Doc. 362 at 3. From this generic opinion, Plaintiff postulates that "the jury could find that Restorelle Y's change in properties as a result of oxidative degradation is a risk not outweighed by any of the product's benefits." *Id.* (quotation marks omitted). But Plaintiff's reasoning ignores the elephant in the room: Dr. Mays could not and did not discuss whether or how often these alleged changes in the material present a

1

risk of injury to any patient. *See* Doc. 163 at 9–10. The Court correctly precluded him from addressing that linchpin question. Dr. Mays' observations about the material's behavior in the abstract did not allow the jury to assess the risk *of injury* to any patient and is thus insufficient to carry Plaintiff's burden of proof. After all, this was a personal *injury* lawsuit and thus requires an assessment of the risk of *injury* through the design of the relevant product. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1248 (S.D. Fla. 2020) (product-liability plaintiffs must prove the existence of "a defect in the product as to render it unreasonably dangerous ***to the user***.") (citation and internal quotation marks omitted) (emphasis added) (alteration in original); *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 512 (Fla. 2015) ("The parties may, in proving or defending against [design-defect] claims, present evidence that a reasonable alternative design existed and argue whether the benefit of the product's design outweighed any *risks of injury or death* caused by the design.") (emphasis added).

  **2**. Contrary to Plaintiff's suggestion (Doc. 362 at 3-4), Dr. Rosenzweig could not close the evidentiary gap left by Dr. Mays—at least not as to the Restorelle Y. With respect to *other* mesh products (like BSC's Advantage Fit, for example), Dr. Rosenzweig could perhaps pick up the degradation football from Dr. Mays and explain to the jury the risk of such degradation actually causing injury in the patient population—for example, by discussing erosion rates observed in patients implanted with the relevant product. But again, the elephant in the room is that Dr. Rosenzweig was expressly precluded from testifying about the design of the Restorelle Y. Doc. 163 at 5–6. And so he didn't. Dr. Rosenzweig offered *no*

2

testimony as to how often degradation occurs with the Restorelle Y, let alone how often it actually results in injury to Restorelle Y patients.

The only patient Dr. Rosenzweig was allowed to discuss in relationship to the Restorelle Y was Plaintiff herself. But that was merely specific causation testimony. Plaintiff's response overlooks that testimony about the result for *one* patient is not a substitute for a design-defect expert opinion that assesses the risk of injury that a product's design presents for *all* users. Mere harm to one person does not make a prescription-only medical device defective. *See Husky Indus. v. Black*, 434 So. 2d 988, 991 (Fla. 4th DCA 1983) ("[A] manufacturer is not an insurer and . . . a manufacturer does not have to make a product accident proof.") (citations removed); *Alexander v. Danek Med., Inc.*, 37 F. Supp. 2d 1346, 1350 (M.D. Fla. 1999) (explaining that even if medical device had caused plaintiff's alleged injuries, that "does not mean that ipso facto the device was defective.") (citation omitted).

**3**. Plaintiff's response also misfires on Dr. Jones and the proper role of a jury. She says the jury could just disregard Dr. Jones's opinion and conclude that the risk she assumed (a 5–10 percent chance of erosion) was "too high." Doc. 362 at 4. But that is not the law. A jury can reject an expert only if it has a reasonable basis for doing so—such as when the expert's opinion has been controverted or severely impeached on cross-examination. *Boyles v. A & G Concrete Pools, Inc.*, 149 So. 3d 39, 48 (Fla. 4th DCA 2014) ("The jury's ability to reject expert testimony must be founded on some reasonable basis in the evidence[,]" such as "conflicting medical evidence" or "evidence that impeaches the [expert's] credibility") (citing *Wald v. Grainger*, 64 So.3d 1201, 1205–06 (Fla. 2011)).

Here, Plaintiff presented nothing that would allow the jury to override Dr. Jones's risk assessment—especially where Plaintiff had no expert who could assess the risks and benefits of the Restorelle Y, much less disagree with Dr. Jones's assessment. In fact, Plaintiff's expert, Dr. Rosenzweig, actually *agreed* that Dr. Jones's risk assessment as to Plaintiff specifically was within the standard of care. *See, e.g.*, June 7, 2021 Trial Tr. Vol. 8 at 216:7–18 (agreeing with Dr. Jones's finding, "noted in a consent form[,]" that "Ms. Bayless was a good surgical candidate"); Doc. 124-2, June 4, 2018 Case-Specific Expert Rpt. of Bruce Rosenzweig, MD at 7 ("Dr. Kathy Jones[']s care and treatment of Ms. Bayless met the standard of care.").

Illustrating the paucity of competent evidence in her case, Plaintiff goes so far as to suggest that the jury could disagree with Dr. Jones because "Coloplast was concerned with erosion rates above even 1 %." Doc. 362 at 4. For one, Plaintiff offers no record citation for this claim because it did not come into evidence. For another, there is no context as to what product was at issue, who expressed the concern, and why. And for a third: so what? That Coloplast wants erosion rates to be one percent or less does not mean that any erosion rate above that number renders the product defective. It surely is not a substitute for an expert opinion balancing the risk of the design against its benefits, let alone a license for the jury to disregard Dr. Jones's opinion. *See Wald*, 64 So. 3d at 1205 (explaining that when evidence is undisputed, "the jury is not free to simply ignore or arbitrarily reject that evidence and render a verdict in conflict with it") (citation omitted).

Grasping at straws, Plaintiff then randomly cites three exhibits (PX 3, 52, and 97) and suggests they show Coloplast's knowledge of problems with Restorelle

4

Y. Doc. 362 at 5. She reasons that the verdict on the design defect claim can be supported by combining evidence of Coloplast's knowledge with evidence of the absence of clinical trials. *Id.* That is nonsense and confirms only that Plaintiff had no design-defect claim against the Restorelle Y. The threshold requirement for a design-defect claim against a prescription-only medical device in Florida is competent expert evidence that the risks of the product's design outweigh its benefits to patients. *See, e.g.*, *Cavanaugh v. Stryker Corp.*, 308 So.3d 149, 155 (Fla. 4th DCA 2020) (holding that design-defect claims involving a "complex medical device" must be resolved through risk-utility test, not consumer-expectations test); *Cates v. Zeltiq Aesthetics, Inc.*, --- F. Supp. 3d ---, 2021 WL 1808583, at *6 (M.D. Fla. Apr. 19, 2021) (citing to *Cavanaugh* and requiring plaintiff's experts to "demonstrate that [medical device] was unreasonably dangerous under the risk utility test").

Given that none of the three exhibits provides any basis for the jury to find that the Restorelle Y's design creates a risk to patients that outweighs its benefits, they cannot help Plaintiff carry her burden on the design defect claim—which is probably why Plaintiff never asked the jury to consider them on the risk-utility question. And the truth is that (a) Plaintiff abandoned any claim that Coloplast failed to adequately warn of the risks, (b) the jury concluded that Coloplast was *not* negligent, and (c) the jury also rejected Plaintiff's request on punitive damages. In other words, the jury plainly rejected any remaining claim based on Coloplast's knowledge or its internal documents. Plaintiff's desperate last-ditch argument fails.

*   *   *

Plaintiff's response makes clear that her case lacked "substantial evidence for a reasonable jury to conclude that the risks of the [product] outweighed its benefits." *Anderson v. Techtronic Indus. N. Am., Inc.*, 2015 WL 7429060, at *5 (M.D. Fla. Nov. 23, 2015). The only proper remedy at this point is to set aside the verdict on the design defect and enter judgment as a matter of law for Coloplast.

## II. Plaintiff's Design Defect Claim Also Fails for Lack of Competent Expert Testimony Establishing General Causation

Plaintiff offers no meaningful response to Coloplast's detailed argument on general causation. She just points to the Court's prior ruling and suggests that Coloplast's general causation argument is applicable only in toxic tort cases. Doc. 362 at 5. But as Coloplast's brief carefully explained (*see* Doc. 346 at 18–20), the Eleventh Circuit has applied the same rules and the same distinction between general and specific causation in cases like this one where a medical injury allegedly arises from the use of a defective product. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1196 n.6 (11th Cir. 2010) (applying same principles to defective car seat and expressly rejecting plaintiff's attempts to distinguish "ordinary trauma" case from toxic tort case); *Kilpatrick v. Breg*, 613 F.3d 1329, 1334 n.4 (11th Cir. 2010) (requiring proof of both general and specific causation in case involving allegedly defective medical device (pain pump)).

In short, Plaintiff's distinction is one without a difference and she points to nothing in the record where any expert or combination of experts established (*not just assumed*) general causation. The Court should thus enter judgment for lack of competent expert evidence on general causation as well.

6

/s/ David J. Walz
Edward W. Gerecke
Florida Bar Number 328332
David J. Walz
Florida Bar Number 697273
Caycee D. Hampton
Florida Bar Number 0100922
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133
Email: egerecke@carltonfields.com
      dwalz@carltonfields.com
      champton@carltonfields.com

Johanna W. Clark
Florida Bar Number 196400
CARLTON FIELDS, P.A.
200 S. Orange Ave., Suite 1000
Orlando, FL 32801-3400
Telephone: (407) 849-0300
Facsimile: (407) 648-9099
Email: jclark@carltonfields.com

and

W. Ray Persons
Florida Bar Number 101747
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
Email: rpersons@kslaw.com

*Attorneys for Defendant Coloplast Corp.*

/s/ David J. Walz
Edward W. Gerecke
Florida Bar Number 328332
David J. Walz
Florida Bar Number 697273
Caycee D. Hampton
Florida Bar Number 0100922
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133
Email: egerecke@carltonfields.com
    dwalz@carltonfields.com
    champton@carltonfields.com

Johanna W. Clark
Florida Bar Number 196400
CARLTON FIELDS, P.A.
200 S. Orange Ave., Suite 1000
Orlando, FL 32801-3400
Telephone: (407) 849-0300
Facsimile:  (407) 648-9099
Email: jclark@carltonfields.com

and

W. Ray Persons
Florida Bar Number 101747
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5100
Email: rpersons@kslaw.com

*Attorneys for Defendant Coloplast Corp.*